Wash, J.,
delivered the opinion of the Court.
This was an action of trover, commenced in the Circuit Court by Little’s admin* istrator, who is appellee, against Chauvin, who is appellant, for the conversion of a female slave, named Sophia. The defendant pleaded not guilty. There was Verdict and judgment for the plaintiff, from which an appeal was prayed to this Court.
The material facts to be collected from the evidence preserved in the record, are, concisely, that Sophia was the daughter of one Celeste, who, 35 or 40 years before the time of trial in the Circuit Court, was in the possession 'of one Joseph Tayon, and shortly thereafter, at7 or 8 years of age, came into the possession of Helen, (the daughter of said Joseph Tayon,) who had intermarried with one Louis Chevalier; that Celeste continued in the possession of said Helen, and her husband, until the death of the latter, in 1801, and after his death, remained in possession of said Helen, until some time in the year 1806, when she was taken out of her possession by the Sheriff of St. Charles county; that Sophia, the slave in the declaration mentioned, was bom some time in the year 1800, whilst the mother, Celeste, remained in the possession of said Helen and her husband; that neither Celeste, nor any of her children, of whom she had several besides Sophia, were ever known to have been out of the possession of said Helen and her husband, from the time when Celeste first came into their possession, until some time in the year 1806, when the Sheriif of St. Charles county, by virtue of a warrant in the following words, viz : — United States, Territory of Louisiana — the United States to the Sheriff in the district of St. Charles, greeting: we command you, that you apprehend Celeste, Catiche, Carmelite, Maze* lite, La Cantue, another named Antoine, and Zebite, reputed slaves of Joseph Tayon, if they be found in your district, and them deliver into the custody of the said Joseph Tayon, there to remain and abide the determination of the general Court of the Territory of Louisiana: given under our hands and seals, this ninth day of May, one thousand eight hundred and six, and of the independence of the United States the thirtieth: R. J. Meigs, (seal;) John B. C. Lucas, (seal;)” took the said Celeste, together with her children, Antoine, Paul, Sophia, (the slave in the declaration men* *448 tioned,) and Margarette, out of the possession of the said Helen, whose'husband, the-said Louis Chevalier had departed this life, some time in the year 1801; that, at the solemnization of marriage between the said Helen and the said Louis, a contract of marriage was entered into, establishing a community between them, according to the customs of Paris; that on thé 26th of June, 1799, Joseph Tayon presented a petition to the then Lieutenant Governor, representing that his wife was dead, that he was aged and infirm, and unable to manage his affairs, and wished to divide, immediately, all his property among his eight children, in equal portions, and to that end, that an inventory might be taken, and a sale made thereóf; that an inventory of the said Tayon’s goods was made out accordingly, containing, amongst other things, the following entry: “ Item; a mulatto, Celeste, 22 years old, having a little boy, Antoine, 3 years old, and another called Paul, 15 months old, valued together at $400.” The inventory is dated the 27th of June, 1799, and is subscribed by Joseph Tayon, and his sons, Charles, Joseph, Jean ahd Francois, and by Louis Chevalier, the husband of the said Helen, and by Jacque Chauvin, who had intermarried with another of the daughters of the said Joseph Tayon, as parties thereto ; that in the list of the sales made of said Tayon’s property, no mention is made of Celeste, or any of her children ; that the said Sophia, in the year 1806, and shortly after she had been taken from tho possession of said Helen, was sold by the said Tayon, at the church door in the town of St. Louis, when one J. P. Cabbanie become the purchaser, who, in 1809,-sold her to Madame Veuve Labbadie, who died intesfaieintheyearl812, upon whose estate Bernard Pratte, Gregoire Sarpy, Auguste P. Chouteau and John W. Honey, administered; that the said John W. Honey had intermariied with one of the daughters of the said Madame Veuve Labbadie, to whom the said slave, Sophia, was sold and conveyed, by a dee'd, executed by Bernard Pratte, E. T. Pratte, Veuve Labbatlie, Gregoire Sarpy, T. H. Labbadie, Gratiot Labb&die, Labbadie Sai py, and A. P. Chouteau, as the heirs of Madame Pelagie Labbadie; that the said John W. Honey, by an act of tho Territorial Legislature, was divorced from hissaid wife, and after his divorce, conveyed said slave, Sophia, to Maria Antoinette, the aforesaid daughter of tho said Madame Labbadie, with whom he had intermarried, as aforesaid, and from whom he had been divorced; that the said Maria Antoinette afterwards intermarried with one John Little, and shortly thereafter died, in the year 1817, leaving her said husband in possession of said slave, from whose possession the said slave, Sophia, in the month of August, 1817; was taken', by virtue of a writ of replevin, and delivered into the posssesion of the said Helen, who kept possession until her death, when she came into the possession of the defendant, the appellant, as administrator of said Helen.
Little died in the year 1821, and in the year 1823, the action of replevin, commenced by said Helen against him in his lifetime, was declared abated by his death. Upon these facts, the Circuit Court thought proper to instruct the jury, first, that it being proved that Joseph Tayon was the first person known to have been in possession of Celeste, she and her offspring must be presumed to be his property, unless an anterior better title be established, or the defendant can show that Madame Chevalier acquired the slave in dispute either by marriage; purchase, bequest’, donation, exchange, or prescription. Second, that the possession of Chevalier, subsequent to Tayon’s possession, was, five times over, long pnough to vest a title in him, and perhaps Madame Chevalier, jointly with her husband, unless it shall appear to your satisfaction that such possession was commenced and continued as a loan, in which evept neither the one nor tho other, or both, could acquire title by prescription. *449 Third, that if the jury believe Madame Chevalier’s possession of the slave, subsequent to the inventory, was a loan from J. Tayon, she cannot thereby acquire title by prescription. Fourth, that if the jury should be of opinion that the possession of Chevalier did not commence and continue as a loan, hut begun in good faith, believing himself or wife to be the owner, the plaintiff cannot recover unless it shall appear to your satisfaction that Little acquire^ the slave by prescription, arising out of his own possession, or those under whom he claims. Fifth, that the act of Assembly, divorcing Honey and wife from the bonds of matrimony, is valid, and the deed from Mr. to Mrs. Honey is valid also. Sixth, that Little, by his intermarriage with Mrs. Honey, acquired all the right his wife had in the slave Sophia. Seventh, that if the combined possession of Madame Labbadie, her administrators, of Honey and Little, amounted to more than five years, and previously to the slave being taken out of the possession of Little, by instituting the action of replevin, and such possession was uninterrupted, and not acquired tortiously by Madame Labbadie, or those claiming under her, the plaintiff, as Little’s administrator, is clearly entitled to recover. Eighth, that Mackey Wherry, in taking the slave Sophia from the possession of Madame Chevalier, under the authority of the paper purporting to be a warrant issued by Judges Lucas and Meigs, as given in evidence in this cause, did not commit a trespass.
The defendant then prayed the Court below to instruct the jury: First, that there is no lawful evidence before the jury of any divorce of John W. Honey and Marie Antoinette his wife. Second, that if the jury be satisfied that Madame Chevalier had adverse possession of the slave mentioned in the declaration six years, no matter how the possession was acquired, she had good title to the property. Third, that the paper given in evidence in this case, purporting to be a warrant issued by said Judges Lucas and Meigs, gave no authority to Mackey Wherry to take said slave Sophia from the possession of Madame Chevalier; all and each of which said instructions the Court refused to give. From this state of the record many interesting questions arise, some of which need not now be settled in disposing of this cause. The points made and insisted on by the counsel for the appellant, are :
First. That the Circuit Court erred in admitting the deed, executed by Bernard Pratte and others, to be read to the jury.
Second. That the Court erred in admitting the deed from Honey to his wife.
Third. That the Circuit Court erred in deciding the act of the Territorial Legislature, divorcing Honey from his wife, to be valid.
Fourth. That the Circuit Court erred in giving its second and third instructions to the jury on the law of prescription, applicable to the cause, and in refusing the second prayer.
Fifth. That the seventh instruction given by the Court was erroneous, as neither Little, nor those under whom he claimed, cpuld acquire title by prescription.
Sixth. That the Court erred in instructing the jury that Mackey Wherry did not commit a trespass in taking Sophia from the possession of Madame Chevalier, under the authority of the warrant, or paper purporting to be a warrant, issued by the Judges Lucas and Meigs, as given in evidence.
On the first point the law is with the appellant. It was earnestly and ingeniously -contended by the counsel for the appellee, that a conveyance by those having title to property in any right whatever, no matter in what character they profess to convey, will pass all property in them at the time of conveyance, &c., and that the *450 deed from Pratte and others, though it he executed by a number of grantors as heirs, should avail to pass the title as administrators of Madame Labbadie, since a part of those who have executed it as heirs, are likewise administrators. The Court is not called on to decide whether, as adminístralo]s, such conveyance would be good. It is sufficient that they have not professed to convey as administrators, and that there is no evidence that they are the heirs, or that those who convey as heirs are the same persons who might, as it is contended, have conveyed in that manner as administrators.
On the second point it was contended by the counsel for the appellant, that the deed from Honey to his wife ought not to have been admitted, because there was never any legal divorce, and because there was no sufficient proof of its execution by Honey. The decision on the first point makes it necessary to devote much attention to the questions here presented. So much of it as refers the error of the Court, on this point, to the decision of the validity of the act of the Territorial Legislature, which forms the third point, need not necessarily be now decided. The question is one of the deepest interest to the community, and of great difficulty to the Court. As to the proof of execution, by proving the hand writing of the witness merely, who was known to reside in the State of Louisiana, the general principle of the law, that the best evidence in the power of the party to produce shall be given, seems somewhat to oppose the current of decisions on that point which is to be considered as settled in accordance with the judgment of the Circuit Court.
On the third point the Court will express no opinion.
On the fourth point the Circuit Court erred in its instructions to the jury, on the law of prescription, as applicable to the case, in this, that there was no proof of a loan from Joseph Tayon to his daughter, Helen, to be left to the consideration of the jury; and in this, that the jury should have been instructed as to the law, that if the possession of Sophia, by Madame Chevalier, was in good faith, and that she had acquired her by purchase, donation, exchange, or the like, that then her title by prescriplion would be good. It was not for the jury to believe that it was or was not a loan, but to decide from the evidence whether Madame Chevalier knew or believed that she was not the owner of Sophia in good faith: 1 Partidas, pp. 371, 375.
On the fifth point it is believed, that the statute of limitations, passed by the Governor and Judges in 1807, operated a repeal of the Spanish law on the subject of prescription; and the authorities are clear, that a possession to avail and give title, must be such as to perfect the title to be derived therefrom in the person seeking to-set it up, or in some one under whom he claims: see 4 Cranch, 93.
On the sixth point the law is clearly with the appellant. It is not at all necessary to decide whether the old General Court for the Territory of Louisiana, had jurisdic - tion of the subject matter of the warrant or not. The act is evidently not the act of the Court. It is not a judicial act, nor any thing like a judicial act, and gave no-authority whatever to the officer or person to whom it was directed.
Let the judgment of the Circuit Court be reversed with costs, and the cause remanded for further proceedings therein, in conformity to this opinion.