## NEW YORK SUPERIOR COURT.

JOHN T. HOWARD and another agt. WILLIAM R. HOLBROOK
and E. T. HOLBROOK, executors, &c.

An agreement as follows: " For value received, I hereby guaranty to Messrs. J.
Howard & Son, that the bond of the Newfoundland Electric Telegraph Co., No.
17, for £200 sterling, shall be of the value of $960 on the 7th of March, 1855, at
which price and at which date I will purchase the same, if offered to me.  March
8, 1853.  D. B. Holbrook"—

*Held*, to be good as an original undertaking or agreement; and as an agreement
within the statute of frauds, it was good on its face, according to the case of
*Miller* agt. *Cook*, *(22 How. Pr. R.*, 66.)

Where it was proved by a witness, not discredited, that he presented the bond (No.
17) on the 7th of March, 1855, at the testator's (D. B. Holbrook) place of busi-
ness, he not being there and being represented to be out of town; that he subse-
quently called and found there a person who answered to that name, who acknow-
ledged the guaranty to be his, but said that he could not redeem it, and who on
being told that the witness had been there twice before, said that he had been
out of town,

*Held*, that as the testator did not refuse to pay, on the ground that no tender had
been made to him personally on the 7th of March, and as he admitted that he
had been out of town and did not suggest that he had not nevertheless been out
of the state, the evidence was *prima facie* sufficient to show that his absence was
conceded to be such as made a *tender to him personally, excusable.*  (ROBERT-
SON, J., *dissenting.*)

*General Term, March*, 1862.

BOSWORTH, *Ch. J.*, MONCRIEF and ROBERTSON, *J. J.*

IN this case, which was tried in November last, the
plaintiffs had a verdict, and the judgment was stayed that
the exceptions might be heard in the first instance at the
general term.   The action was brought upon the following
agreement:  " For value received, I hereby guaranty to
Messrs. J. Howard & Son, that the bond of the Newfound-
land Electric Telegraph Co., No 17, for £200 sterling, shall
be of the value of $960 on the 7th of March, 1855, at which
price and at which date I will purchase the same, if offered
to me.   March 8th, 1853.   D. B. Holbrook."

The plaintiff's counsel, after the formal evidence, proved

the presentation of the bond on the 7th of March, 1855, at the office of D. B. Holbrook, he being absent therefrom, and its subsequent presentation to a person at that office who called himself D. B. Holbrook and acted as such, and his refusal to purchase it. The defendants' counsel claimed that the words " for value received" were an insufficient expression of the consideration, and that the agreement should be construed as a guaranty, and not an agreement of sale. The defendants offered no evidence. The plaintiffs' counsel insisted that it was optional with the plaintiffs to treat the agreement as a guaranty or an agreement of sale. The remaining facts sufficiently appear in the opinion of the court.

ALEXANDER W. BRADFORD, *for the appellants.*
LEWIS L. DELAFIELD, *for the respondents.*

BOSWORTH, Ch. J. The instrument of March 8, 1853, signed by the testator, is, on its face, a valid contract. As an original undertaking or agreement, the point is free from difficulty; as an agreement within the statute of frauds, it is good on its face, according to the recent case of *Miller* agt. *Cook*, (22 *How. Pr. R.*, 66.)

The admission of the deposition of Norris is not an error authorizing a new trial. If the agreement, on its face, expressed sufficiently a consideration that made it obligatory, proof of the actual consideration could not possibly prejudice the defendants.

The charge of the judge is not given. It should be presumed to have related to the only question of fact that could be properly submitted, viz : whether the witness Keeler actually presented the bond (No. 17) to the testator, and he refused to redeem it, stating that " he had not got the money," &c. &c. The witness is quite confident that he presented it on the 7th of March, 1855, at the testator's place of business, he not being there and being rep-

resented to be out of town; that he subsequently called and found there a person who answered to that name, who acknowledged the guaranty to be his, but said that he could not redeem it, and who, on being told that the witness had been there twice before, said that he had been out of town.

If the evidence was insufficient to be submitted to a jury, a new trial should be granted, as the court refused to dismiss the complaint, and the defendants excepted.

It may be that a tender to the testator personally was indispensable, even though he was out of town, if within the state. (*Smith* agt. *Smith*, 2 *Hill R.* 351; *Watson* agt. *Hetherrington*, 1 *Car. & H. R.*, 36.)

But as the testator did not refuse to pay, on the ground that no tender had been made to him personally on the 7th of March, and as he admitted that he had been out of town, and did not suggest that he had not nevertheless been out of the state, I think the evidence is *prima facie* sufficient to show that his absence was conceded to be such as made a tender, to him personally, excusable. There was no attempt made by the defendants to prove that he was not out of town, or was within the state.

Evidence that on two or three occasions, when the witness first called at the testator's place of business, he was told that the testator was out of town, and that there was no one there to represent him, and that subsequently he found there a person answering to the name, who said he was the man and admitted the contract to be his, but refused to pay the money, is competent to go to a jury upon the question of his identity, and sufficient to uphold a verdict in the absence of all evidence tending to raise any suspicion of mistake or collusion. (*Roden* agt. *Henry Thomas Hyde*, 4 *Ad. & El. N. S. R.*, 626; *Mineta* agt. *Wolfhausen*, 2 *C. & K. R.*, 744; *Hunt* agt. *Maybee*, 3 *Seld. R.*, 270, 271; *Hatcher* agt. *Rocheleau*, 18 *N. Y. R.*, 86, 92–96.)

The fact asserted by the witness, that he called at Mr.

Holbrook's place of business, was not attempted to be discredited by any cross-examination of the witness, or any other evidence tending or apparently designed to throw any doubt upon its accuracy. Under such circumstances, and in the absence of all evidence tending to excite a suspicion that the witness did not see Mr. Holbrook, but on the contrary saw and conversed with some other person, I think the evidence sufficient to warrant the inference that he saw Mr. Holbrook, and had with him the conversation testified to. I think the judgment should be affirmed.

MONCRIEF, J., concurred.

ROBERTSON, J., *dissenting*. The only circumstance on the trial which makes me doubt the right of the plaintiffs to recover is the proof of the identity of the person of whom the demand was made; if he was the defendants' intestate, the plaintiff had a right to recover.

Numerous decisions in this state, culminating in *Church* agt. *Brown*, (21 *N. Y. R., pp.* 316, 321–332;) *and Miller* agt. *Cook*, (22 *How. Pr. R.*, 66,) settle " for value received" to be the expression of a sufficient consideration within the meaning of the statute of frauds. The agreement gave the plaintiffs the option to sue on the contract of indemnity or guaranty of value for the difference between the named and the market price, or for a price fixed on a tender of the bond; and in either case I do not think the statute could apply. The tender is alleged to have been made by a witness who did not know the deceased, in the office of the latter, to a person who claimed to be him. The same witness alone testified to its being his office. It is plain he could not know it to be his, by having seen him go in or transact business there, because he did not know him; and he could only rely for the fact upon hearsay information, which would not be evidence. If it was not his office, proved to be so by those who knew the fact by seeing him go in there or transact business there, the other fact, that the person seen claimed to be the intestate, would be of no avail;

because, although proof of the same name be *prima facie* evidence of identity, yet the bearing of the same name must be a matter of repute, and is not established merely by a person's once claiming it, otherwise great frauds might be perpetrated. The original party in this case is dead, and cannot be produced for identification, or otherwise ; no aid can be derived from him in proving an *alibi* at the time of the tender ; and any one who personated him at his reputed office might make him liable.

In Butler's Nisi Prius (1716) it is laid down that a man's calling himself by a particular name did not make him so, and in *Jones* agt. *Jones*, (9 *Mees. & Wels. Rep.*, 75,) it was held that all presumption of identity was repelled by proof that several persons of the same name lived in the same place. The necessity of some other proof besides identity of name, of identity of person, when such person resides in a large city, is recognized in *Hubbard on Succession*, (*pp.* 103, 464, 465,) particularly in regard to a registry of names in baptism and marriage. (*But* agt. *Barlow*, 1 *Doug. R.*, 70 ; *Bruen* agt. *Mason*, 1 *Car. & P. Rep.*, 202 ; *and Wedgwood's case*, 8 *Greenl. R.*, 75.) All the BARONS in the court of exchequer, in England, held that, although proof of the handwriting of a subscribing witness was evidence of an execution of an instrument by some one of the name mentioned in it, further evidence was necessary of the identity of such person with the defendant. (*Whitelock* agt. *Musgrove*, 1 *Cr. & Mees. R.*, 511.)

The same views had been previously expressed by one of the same judges (BAYLEY) in *Nelson* agt. *Whittal*, (1 *Barn. & Ald. R.*, 21.) In a subsequent case in the Queen's Bench a different rule was adopted, Lord DENMAN sustaining ABBOT, Justice, who had dissented in *Nelson* agt. *Whittal*; his argument was that, although it was a hardship on the defendant to prove a negative, it would be a greater hardship on the plaintiff, and that the danger encountered in suing a wrong person, and the facility of disproving the presump-

tion by bringing the party into court, was sufficient to overthrow the argument *ab inconveniente.* It is evidently no answer in this case, as there is only the hazard of costs in serving a summons on the wrong person if alive, and the real defendant is dead.

In the case of *Hunt* agt. *Mabie,* (3 *Seld. R.,*) presentation of a note to a person at a place which was written after the makers on such note, and where there was a sign of a tailor, the word " Tailor" being also written after such note, was held sufficient. This was undoubtedly correct on the ground on which it was put, to wit, that the direction on the note was an admission by the person who made it, that such was the proper place to look for him; it does not establish that a person claiming to be a particular individual in his reputed office can do acts to bind him.

There certainly can be no difficulty in proving by other witnesses who knew the deceased and his place of business, that the place in question was his office, or the person of whom the demand was made was the deceased; and the case should go back for a new trial on that point, as the laxity of court on the question of identity may lead to dangerous consequences, particularly when a party is dead.

The judgment should be reversed and a new trial ordered, with costs to abide the event.