GLOBE PRINTING COMPANY, Respondent, v. FRED. STAHL, Appellant.

St. Louis Court of Appeals, November 23, 1886.

1. EVIDENCE—JUDICIAL NOTICE—TELEPHONES.—Courts will take judicial notice that telephones have become an ordinary medium of communication and interchange of thought.

2. —— Evidence of an answer purporting to come from the defendant, received over wire connecting the defendant's telephone with that of the plaintiff, in response to an inquiry made through the same medium by the plaintiff, is admissible without positive proof that the defendant sent the answer.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Affirmed.*

GEORGE A. CASTLEMAN, for the appellant.

O. B. GIVENS, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action to collect a debt alleged to be due upon contract. The case was tried before a jury; the

plaintiff had a verdict and judgment, and the defendant has appealed.

The sole question which arises upon the record is, whether the court erred in admitting evidence of a conversation had through a telephone between the plaintiff's book-keeper and a person who answered to the defendant's name. The book-keeper testified that he "called up by telephone to the general office of the Bell Telephone Company for defendant's number, and was, by the central office, connected therewith; that the list of the telephone company showed that the defendant had two telephones, one at his undertaking establishment on Franklin avenue, in the city of St. Louis, and another at his livery stable, on Olive street; that witness was not certain which number he called, but that his best recollection was that it was the Olive street number; that there was an answer from the defendant's number to the telephone call; that he (the witness) did not know whose voice it was, and does not now know; that the witness did not know the defendant's voice, and did not know the defendant, but that he asked, through the telephone, if that was Stahl (the defendant), and the answer was "Yes." The witness was then asked to give the conversation then had through the telephone with the party answering the call. In response to this question the witness testified, against the objection of the defendant, "that he asked why defendant did not pay the bill for which this suit was brought, and that the party answering said, 'All right; I will attend to the matter about the first of the month.'" A previous witness had testified for the plaintiff to a conversation through the telephone in a similar manner with the defendant, whose voice the former witness identified.

We are of the opinion that the court correctly ruled that the testimony was admissible. We should have no difficulty in so holding upon principle, but we find on examination of the books several decisions upon anal-

ogous rules touching the admissibility of evidence. It is said by a recent writer of reputation: "Evidence that a person making a tender, found at the place of business of the other party a person answering to the name, who said he was the man and admitted the contract to be his, but refused to pay the money, is competent to go to the jury upon the question of identity, and sufficient to uphold a verdict." Abbott's Trial Evidence, 316. It has been held in Massachusetts that a letter received through the postoffice, purporting to be written in reply to a letter sent to the person by whom it purports to be signed, is admissible without proof of the handwriting, though the question was not deemed important and was not much considered. *The State v. Bradish*, 14 Mass. 296, 297, 300. In Pennsylvania the plaintiff's attorney was permitted to testify that a person unknown to the witness had introduced himself to the witness, representing himself as the defendant, and promising to pay the debt sued on, and this, without other evidence of the identity of the person who so introduced himself and promised. In a case in the superior court of New York City, evidence that, on two or three occasions when the witness first called at the place of business of the defendant's testator, witness was told that the testator was out of town and that there was no one to represent him, and that subsequently the witness found there a person answering to the name of the defendant's testator, who said that he was the man and admitted the contract sued on to be his, but refused to pay the money due thereon, was held competent to go to the jury on the question of his identity and sufficient to uphold a verdict for the plaintiff, in the absence of any evidence tending to raise a suspicion of mistake or collusion. *Howard v. Holbrook*, 9 Bosw. 237, 243.

Several analogous English cases are also found.

Thus, where a witness, called to prove the defendant's handwriting, had corresponded with a person bearing his name, who dated his letters from Plymouth

Dock, where the defendant resided, and where, it appeared, that no other person of the same name lived, this evidence of the defendant's identity was held sufficient. *Harrington v. Fry*, Ryl. & M. 90.

In like manner it was held by Lord Kenyon at *nisi prius* that if a letter be sent to a particular person, and an answer be received in due course, the fair presumption is that the answer was written by the person addressed in the letter, and accordingly he ruled that a witness who had so written such a letter and received such an answer, might be examined as to the genuineness of another paper, for the purpose of showing whether it was or was not written by the person with whom he had this correspondence. *Carey v. Pitt*, Peake Add. Cas. 130.

In an action for damages for a negligent injury in navigation, it was objected that the evidence did not show that the defendant was the pilot in charge of the vessel, whereupon the plaintiff called out in open court, "Mr. Henderson!" (the name of the defendant), and a man in court answered, "Here; I am the pilot." A witness then testified that the man who had so answered was at the time acting as pilot. It was held, reversing an order directing a non-suit, that this was sufficient evidence of identity to go to the jury. *Smith v. Henderson*, 9 Mees. & W. 798, 801.

In another case a witness had stated that he had introduced a person of the name of the defendant to the plaintiff as a customer, and that he saw him write a letter, which was produced, and which established the plaintiff's claim; but the witness had not seen the person since, and did not know that he was the defendant. It was held that this evidence was admissible, and was sufficient to support a verdict for the plaintiff. *Sewell v. Evans*, 4 Q. B. 626.

In an action against an alleged acceptor of a bill of exchange, the only evidence of his acceptance was the testimony of a bank clerk to the effect that two years

before he saw a person of the defendant's name sign his name in a book; that he had never seen him since, but that he thought that the handwriting was the same, and had since seen checks bearing the same signature. It was held that this evidence was admissible. *Harrington v. Fry*, 8 Scott. 384.

In a similar action against the alleged acceptor of a bill of exchange, it appeared that the bill had been sent by mail for acceptance, directed to "Charles Banner Crawford, East India House," and that it had been returned accepted, "C. B. Crawford." A witness testified that the signature to this acceptance was the signature of Charles Banner Crawford, who was formerly a clerk in the East India House, but the witness did not know whether that Mr. Crawford was the defendant. It was held that this was sufficient evidence of identity, at least in the absence of an affidavit to show that the defendant was not the same person. *Greenshields v. Crawford*, 9 Mees. & W. 314.

Any person examining the directory of the city of St. Louis will see that there are in this city many persons who possess the same christian and surname, but such circumstances have not operated to do away with the familiar rule, acted upon in this state, and so far as we know in all other jurisdictions, that identity of name is *prima facie* evidence of identity of person. *Flournoy v. Warden*, 17 Mo. 435; *Gitt v. Watson*, 18 Mo. 274; *The State v. Moore*, 61 Mo. 279.

It was held in Massachusetts in a criminal trial that for the purpose of proving that the defendant had made certain communications to persons in New York, evidence was admissible that certain telegraphic messages in his writing had been delivered to the operators of the telegraph company, other evidence being given to the effect that such messages were by the operators transmitted over the wires to the persons to whom they were addressed by the defendant. This decision was approved and applied by an eminent judge in a celebrated criminal

trial. *The United States v. Babcock*, 3 Dill. C. C. 571, 575, per Dillon, J. It is but an extension of the familiar rule applicable to carriage by the post, under which evidence that a letter was deposited in the postoffice, properly directed, is admissible as tending to show that it was received by the person to whom it was addressed, provided such person were living at the place to which it was directed, and usually received his letters there. 1 Greenl. Ev., sect. 40; *Dana v. Kemble*, 19 Pick. 112; *Briggs v. Hervey*, 130 Mass. 187; *Huntley v. Whittier*, 105 Mass. 391; *Bank v. McMonigle*, 60 Pa. St. 156; *Bussard v. Levering*, 6 Wheat. 102; *Lindenberger v. Beall*, 6 Wheat. 104.

Upon a somewhat analogous principle it has often been held that in case of the death or absence from the country of a subscribing witness, it is competent to prove the genuineness of his signature, and that such proof will raise a presumption of the genuineness of the signature which the subscribing witness attested. *Adams v. Kerr*, 1 Bos. & Pul. 361; *Nelson v. Wittal*, 1 Barn. & Ald. 19; *Sluby v. Chaplin*, 4 Johns. 461. And although this rule has not been universally accepted (*Robards v. Wolf*, 1 Dana, [Ky.] 155), it seems to be the law in this state. *Little v. Chauvin*, 1 Mo. 626.

But laying out of view these analogies, a decision of our supreme court is found so closely analogous to the case at bar that it may be treated as an authority which we should not be at liberty to disregard. The action was under the statute of this state, known as the "Boat and Vessel act," for the non-performance of a contract alleged to have been made by the master of the defendant steamboat with the plaintiff by telegraph. Evidence was given tending to show that the plaintiff sent a dispatch to the defendant steamboat, which was delivered to her officers. The plaintiff then offered evidence tending to show that a dispatch purporting to come from the master of the steamboat in reply to his dispatch addressed to him, had been delivered for transmission in the

telegraph office at the place where the boat was, and had been received by him, but without offering to prove that such dispatch had been in fact sent by the master of the defendant steamboat, or with his consent. It was held that this evidence was admissible. In giving the opinion of the court, Scott, J., said: "It is not expected, when men contract by telegraph, that they are afterwards to be bound or not, as their passions or interest may dictate. Such contracts may be regarded as binding and obligatory, as if made in the ordinary way. Private communications relative to business, made by means of a telegraph, are usually relied on, and that reliance has not proved unfounded. When men consent to use the telegraph for the purpose of making an agreement, there is no hardship in submitting to a jury, as evidence of their consent to such an agreement, those facts and circumstances which are received by and acted upon by mankind in communication through that medium. Here, the defence does not turn on any imposition or forgery on the part of the agents of the telegraph; but the plaintiff, by the pleadings, is put to the proof of the contract on which he has sued. The evidence is ample to show that a communication was made by the plaintiff to the defendant, but the difficulty arises in showing that the answer to that communication was from the agent of the defendant. The telegraphic agent testified that the dispatch received from the plaintiff was delivered to the officers of the steamboat Robert Campbell, and a dispatch in answer to that of the plaintiff was deposited in his office to be forwarded to the plaintiff, which was done on the next day. If, under such circumstances, any person had received a dispatch in answer to one forwarded by him, he would not have failed to act upon it. His conduct would have been based upon the faith usually given to the correctness and fidelity with which such business is transacted by the agents of the telegraph. For these reasons, we are inclined to the opinion that the evidence offered by the

plaintiff was sufficient to permit the dispatch to be read to the jury, who would then, from all the circumstances, determine whether it was the act of the master of the boat." *Taylor v. Steamboat,* 20 Mo. 254, 260.

The only decision to which we have been referred where the instrument of communication was a telephone, is that of the court of appeals of Kentucky, in the case of *Sullivan v. Kuykendall* (24 Am. Law Reg.) In that case, A., desiring to communicate with B., applied to the telephone operator to call B. The operator thereupon held what purported to be a conversation with B., repeating the supposed communication of B. to A. as it came over the wire. It was held, in an action between A. and B., that A. might prove, by himself and others, what the operator had reported to him as coming from B., the operator himself having been called as a witness and not remembering the conversation.

All these decisions proceed upon the principle that those evidentiary matters upon which men are compelled to act in the ordinary affairs of life and in the usual transactions of business ought to be allowed to go to the jury in cases where they become material to the issues on trial. The telephone, although a very recent invention, has come into such common use that, we think, as the learned judge of the circuit court is reported to have reasoned, that, the courts may properly take judicial notice of the general manner and extent to which it is made use of by the business community. No doubt very many important business transactions are every day made by telephonic communications of precisely the same character as that which the witness was allowed to testify in this case. A person is called up by one desiring to communicate with him by means of a connection of their respective wires through what is known as the central office. A conversation ensues. It may be relative to the most important matters of business. It may involve a contract for the sale of bonds and stocks, instructions from a principal to his agent touching important

transactions, or the acknowledgment of a debt due and a promise to pay the same. The use of this instrument facilitates business to such an extent that it would be very prejudicial to the interests of the business community, if the courts were to hold that business men are not entitled to act upon the faith of being able to give in evidence to juries replies which they receive to communications made by them to persons at their usual places of business in this way.

The judgment of the circuit court will be affirmed. It is so ordered. All the judges concur.