M. A. MORRELL AND A. T. GERRANS, Respondents, v.
THE KOERNER–PARKER LUMBER COMPANY,
Appellant.

St. Louis Court of Appeals, December 6, 1892.

1. **Evidence:** COMPETENCY OF ADMISSIONS. The statements of a third person are not competent evidence against a party as the admissions of his agent, unless there is evidence of his agency.

2. **Sales:** PRINCIPAL AND AGENT: RIGHT OF ACTION BY AGENT. If an agent in possession of personal property sells it in his own name, he can maintain an action in his own name against the vendee for damages for the breach of the contract of sale.

3. ———: ACCEPTANCE BY VENDEE: REASONABLE TIME: LAW AND FACT. When goods sold are deposited and tendered by the vendor to the vendee at the proper place of delivery, and are there subject to pillage, a delay of from three to four days on the part of the vendee in signifying to the vendor his acceptance or his rejection of the goods is, in the absence both of any custom of the trade to the contrary, and of any excuse for non-acceptance, unreasonable as a matter of law; and a loss arising from pillage after such tender should be borne by the vendee.

4. **Instructions:** ASSUMPTION OF FACTS. An instruction in an action arising out of the sale of lumber of specified dimensions and quality is considered herein, and is *held* not to contain an assumption that the lumber tendered under the sale was of those dimensions and quality.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED.

*Rassieur & Schnurmacher,* for appellant.

(1)  The court erred in excluding the testimony of Messrs. Koerner and Parker concerning their conversation with the office of Morrell & Gerrans by telephone, because they could not identify the voice at the other end.  The evidence showed that previous requests, made in the same way, with the same office, had been

acted on. This made the evidence competent. *Printing Co. v. Stahl*, 23 Mo. App. 451. (2) The court should have given defendant's instruction in the nature of a demurrer to the evidence. Plaintiffs had acted merely as agents for the A. Wilbert's Sons' Lumber & Shingle Company, and had no interest in the contract, not even for their commissions, which they admitted had been fully paid them by their principal before they brought this suit. *White v. Bennett*, 1 Mo. 102; *Deyers v. Becknell*, 1 Mo. 333; *United States v. Villalonga*, 90 U. S. 35, 43. The proof also showed that the damage was of the plaintiffs' own making. Defendant offered and stood ready to pay the contract price for the lumber in dispute, based on the same measurements at which plaintiff sold it at private sale to Mr. Luehrmann, for $3.50 and $4.50 per thousand less. A party who is injured by the act or default of another must use ordinary judgment to arrest the effect thereof. He cannot recover for unnecessary damages. *State to use v. Powell*, 44 Mo. 436; *State to use v. Harrington*, 44 Mo. App. 297; *Warren v. Stoddart*, 105 U. S. 224; 1 Sedgwick on Measure of Damages, p. 164. (3) The court erred in giving instruction, numbered 1, for plaintiff. It submitted to the jury the question of whether or not there had been a tender and refusal of the third lot of lumber, the lot referred to in the instruction as the lot of July 31. The evidence relating to this lot was all one way; there was no conflict between the parties over it. There was, therefore, nothing to be submitted to the jury, and the court should have declared the law on the undisputed facts. That instruction was also erroneous and misleading, in that it stated to the jury that "said lumber was of the dimensions and quality mentioned in said letter of April 6, 1891," etc., instead of leaving the jury to find such to be the fact. (4) At the very best for the

plaintiffs, the evidence shows that the verdict was grossly excessive.

*Frank E. Richey*, for respondents.

(1)    There was no error in excluding the testimony as to the conversations over the telephone.    It is only those telephonic messages that purport to come from the opposite party in answer to inquiries made through the same medium, that are admissible without positive proof that the opposite party sent the answers.    *Printing Co. v. Stahl*, 23 Mo. App. 459.    (2)    The respondents had a right to sue in their own names.    The contract was made in the name of the agents, the name of the principal was not disclosed, the agents were personally liable on the contract.    In such cases agents have a right to sue in their own names.    *Keown v. Vogel*, 25 Mo. App. 417; *Saladin v. Mitchell*, 45 Ill. 79; *Grover v. Warfield*, 50 Ga. 644; *Tyler v. Freeman*, 3 Cush. 261; Story on Agency, secs. 391, 393, 396, 397, 401a.    The respondents had an interest in the amount to be recovered from the appellant, and were, therefore, entitled to sue in their own names.    *Whitehead v. Potter*, 4 Ired. L. 357; *Murray v. Toland*, 3 Johns. Ch. 569; *Ladd v. Arkell*, 5 Jones & Sp. 35; *Everett v. Bancroft*, 22 Ohio St. 172.

BIGGS, J.—This is an action for damages for the violation of a contract.    On the sixth day of April, 1891, the plaintiffs were copartners in business under the firm-name of Morrell & Gerrans.    On that day the defendant addressed a letter to the plaintiffs, in which it proposed to purchase from them two hundred and fifty thousand feet of Louisiana cypress lumber, stating various dimensions and prices for the different grades.    Weekly shipments were to be made of not less

than ten nor more than twenty thousand feet; each shipment to be paid for by the notes of the defendant payable in ninety days, or by cash with a discount of two per cent. The lumber was to be shipped to St. Louis by the Anchor line of steamboats, and, upon its arrival, was to be inspected by L. F. Tebeau, W. C. Clemenson, S. D. Weber or George Bradley. The defendant expressed in the letter a preference for Tebeau as inspector. The plaintiffs accepted the proposition as made, and within a short time commenced to deliver lumber under the contract. The lumber was received, inspected and paid for, without controversy, until the eighth day of July, when Tebeau inspected a cargo of lumber which arrived on that day and issued a certificate for thirty one thousand, nine hundred and twenty-four feet. On the following day this certificate, together with an invoice of the lumber, amounting to $829.74, was sent by the plaintiffs to the defendant. The officers of the defendant, not being satisfied with the work of the inspector, remeasured the lumber, and according to their measurement, as testified to by them, Tebeau had certified to about twenty-eight hundred feet more lumber than was contained in the shipment. Immediately afterwards Koerner, one of the defendant's officers, undertook to communicate with the plaintiffs concerning the alleged shortage by means of the telephone. Gerrans was at the time absent from the city, and they had some communication with Mr. Morrell, the husband of the plaintiff, M. A. Morrell, which the court excluded. The defendant refused to receive the shipment, and it remained on the wharf until the return of Gerrans on the twenty-first of July, when the defendant demanded another inspection which the plaintiffs declined to have made. During the absence of Gerrans another shipment of lumber arrived, which Tebeau inspected on the tenth

of July, and for which he issued his certificate of that date.    That certificate was not sent to the defendant until the twenty-first day of July, when it refused to accept the lumber, for the reason that it had been ten or twelve days since the inspection, and it had no assurance that all of the lumber was still on the levee. The plaintiffs, recognizing the reasonableness of this objection, had the lumber reinspected by Tebeau on the twenty-fifth of the month, and they delivered a new certificate of inspection to the defendant on that day. The defendant had both lots of lumber reinspected by Bradley, showing a shortage of about twenty-eight hundred feet on the first lot, and about forty-eight hundred feet more of common lumber, and less of clear, in the second lot than was certified to by Tebeau.    The contract price for clear lumber was $26.50 to $27.50 per thousand feet, and for common lumber $10 per thousand feet.    The defendant, according to the testimony of its officers, offered to receive both lots of lumber according to the inspections made by Bradley, and tendered its note for the purchase price.    The plaintiffs declined to accept the note.    On the twenty-seventh of July a third lot of lumber arrived, and the inspections showed that some of the boards were of greater length than specified in the contract.    For that reason the defendant declined to accept the shipment.    Thereupon the plaintiffs had the ends of the boards sawed off, so as to bring the lumber to the required length, and, on the thirty-first of July, they mailed to the defendant a new certificate of inspection made by Tebeau, showing that the lumber had been made to correspond with the requirements of the contract.    The defendant admits that it received the new inspection either on the first or third day of August. Nothing further was said or done concerning the lumber until the sixth day of August, when the plain-

tiffs notified the defendant that the three lots of lumber would be sold on that day for its account. On the same day the lumber *was* sold to another dealer for from $3.50 to $4.50 less per thousand feet than the contract price. Gerrans testified that, in making the sale, he realized the full market value of the lumber. This statement we deem sufficient to show the matters in controversy between the parties. Under the instructions of the court the jury returned a verdict for $225, upon which judgment was entered. The defendant has appealed and complains of the action of the court, *first*, in refusing to allow the defendant to prove the conversation by telephone between Koerner and Mr. Morrell, concerning the first lot of lumber; *second*, that the court should have sustained the defendant's demurrer to the evidence; *third*, that the plaintiffs' first instruction is faulty; *fourth*, that the verdict is excessive under the evidence.

The first assignment must be ruled against the defendant. It is only telephonic messages, which purport to come from the opposing party or his agent, that are received in evidence without further proof. *Globe Printing Co. v. Stahl*, 23 Mo. App. 451. It appeared that Koerner first called for Gerrans. He received an answer from some one that Gerrans was absent from the city. He then called Mr. Morrell, the husband of the plaintiff, M. A. Morrell, to the telephone. It was the conversation then had with Morrell which the defendant proposed to prove. This offer was not supplemented by proof that Morrell had charge of the business of the firm in the absence of Gerrans, or that he had anything whatever to do with the business. But, on the contrary, the plaintiffs' evidence tended to establish the fact that Mr. Morrell was in no way interested in the firm, and had no connection with its business in any capacity. Therefore, any communica-

tion had with Morrell by telephone or otherwise concerning the lumber was totally irrelevant, and the court did right in excluding it.

The defendant's counsel insist that the demurrer to the evidence ought to have been sustained for two reasons: *First*. Because the plaintiffs in the sale of the lumber acted as the agents of a third party, and had collected their commissions for the sale of the lumber in dispute. *Second*. Because the loss sustained by the resale was of plaintiffs' own making, as the defendant offered and always was ready to pay the *contract price* for the lumber in dispute on the same measurements at which it was resold.

It appeared from the evidence that the plaintiffs were doing a brokerage business in the sale of lumber, and that they had arrangements with a lumber firm in the state of Louisiana to furnish cypress lumber under their St. Louis contracts. As compensation or commission they received $1 per thousand on all lumber sold. In the defendant's letter, which is the contract between the parties, there is nothing to show that the firm in Louisiana had any interest in the contract or the lumber bargained for; on the contrary, the lumber was treated as belonging to the plaintiffs, and the lumber when shipped was consigned to them.

If it be conceded that the plaintiffs were merely agents in the sale of the lumber, the action was properly brought under the authority of the case of *Coggburn v. Simpson*, 22 Mo. 351. It was there decided that, if an agent in possession of property sell it as his own, he may recover the price in his own name. If this can be done, then such an agent could certainly recover damages for a breach of the contract of sale. But, aside from this, the evidence of the plaintiffs tended to prove that prior to the institution of the suit they had remitted to the firm in Louisiana the full contract price

of the lumber in dispute, thus showing that they were the only persons who could possibly be interested in the result of the litigation.

The second ground for nonsuit raises the question of the right of the defendant to demand a reinspection of the first lot of lumber. It is true that the evidence tended to prove that the defendant was ready to take the first and second lots of lumber, but the offer was always accompanied with a demand for a reinspection of the first lot, and payment to be made on that basis. There was evidence that some of the first lot of lumber had been taken away by some one between the first inspection and the demand for the second, and, under the proposition of settlement as made by the defendant, the plaintiffs would have to bear that loss. We think that it was the defendant's duty to promptly notify the plaintiffs of the alleged shortage in the shipment of July 8, and, having failed to do so until July 21, and the lumber in the meantime having remained on the levee in an exposed position, it must be presumed that the defendant had accepted the goods under the first inspection. As the offer to take the second lot of July 10 was always coupled with the condition that the first lot should be reinspected, this put the defendant in default as to the second lot. Concerning the third lot the defendant admits that it received the certificate of inspection, and an order on the shipper for its delivery, either on the first or third day of August. The defendant, having failed to remove the lumber from the wharf, or to notify the plaintiffs of its acceptance, the plaintiffs on the sixth day of August sold it. The contention of the defendant is that it had a reasonable time within which to receive this lot of lumber, and that whether it failed to so receive or accept it was a question of fact which ought to have been left to the jury. An instruction presenting this view was asked by the defendant, and

refused by the court. The instruction was properly refused. In the absence of proof of a custom of the trade to the contrary, and in the absence of any excuse for non-acceptance, we are prepared to say as a matter of law that goods exposed to pillage must be accepted by the vendee without delay, and that a delay of from three to four days after such goods are tendered is unreasonable. The defendant attempted to prove such a custom, but failed. We think that the demurrer to the evidence was properly overruled.

The plaintiffs' first instruction reads: "The court instructs the jury that, if they believe and find from the evidence that plaintiffs and defendant entered into the contract mentioned in the petition for the sale and delivery of certain cypress lumber, of the dimensions, quality and at the prices and upon the terms and conditions stated in the letter dated April 6, 1891, read in evidence, and if the jury further believe and find that, while, in the course of fulfilling their part of said contract, plaintiffs tendered to defendant certain invoices of cypress lumber on or about July 8, July 25 and July 31, 1891, which said lumber was of the dimensions and quality mentioned in said letter of April 6, 1891, and that the lumber so tendered had been inspected in accordance with the terms of said letter, and that the quality of cypress lumber mentioned in said invoices and in the certificates of inspection was then at the place of delivery agreed upon between the parties, and if the jury still further believe and find that the defendant refused to accept the lumber so tendered to it, as aforesaid, then they will find a verdict for plaintiffs."

The objection made to this instruction is that it assumes that the lumber, which was tendered and which the defendant refused to accept, *"was of the dimensions and quality"* mentioned in the contract. We think that this criticism is not quite well founded.

The instruction puts the disputed facts in a hypothetical way, to the jury. It is true that there is some obscurity as to that particular paragraph, but not enough to lead us to believe that the jury was misled concerning the real issues as made by the pleadings and the evidence. This assignment will likewise be overruled.

The plaintiffs' evidence tended to prove that the lumber was resold at a loss of from $3.50 to $4.50 on the thousand feet, and that the price obtained was the market value of the lumber. The finding of the jury was within the limits of this evidence. Therefore, the exception that the judgment is excessive must be overruled.

Finding no error in the record the judgment will be affirmed. All the judges concur.