# Bolling & Son *v.* McKenzie.

*Action on Bill of Exchange, by Indorsee against Indorser.*

1. *Theory of bill of exchange.*—In theory, the legal implications arising from the face of a bill of exchange are, that the drawer has funds in the hands of the drawee, that he is indebted to the payee, and that he directs payment of that debt to be made by the drawee out of said funds; and if the bill is indorsed by the payee to a third person, there is nothing on the face of the papers showing that the indorsement is a part of the original transaction, or rests on the same consideration.

2. *Liability of indorser; what excuses notice; special and common counts.* The liability of an indorser of a bill is only contingent and conditional, requiring due presentment and notice of the drawee's failure to pay; and if the complaint contains only a special count on the indorsement, to which a plea is interposed denying presentment and notice, a replication averring that the defendant is the real debtor, and that the consideration of the bill is goods and merchandise sold to him by plaintiff, is a departure; nor would the replication be good, if the complaint contained the common counts, unless it averred facts showing that the bill was accommodation paper in the hands of the payee, given to enable him to raise money or buy goods, and worthless until indorsed by him to the plaintiff.

3. *Same; subsequent promise, or acknowledgment of liability.*—If the drawer or indorser of a bill, knowing that due presentment, protest and notice have not been made and given, promises to pay, or acknowledges continued liability and obligation to pay, this fixes his liability as if there had been no *laches* on the part of the holder; and such acknowledgment, or admission, is sufficient, whether made before or after the commencement of the suit; but a promise to pay, made after the commencement of the suit, is not sufficient, unless it includes something which is the equivalent of an admission that the original liability still subsists.

4. *Double replication; demurrer.*—A replication is not demurrable because it is double, or contains two answers to the pleas; and if one branch of it is defective, or insufficiently averred, the defect can not be reached by demurrer to the replication.

[Bolling & Son v. McKenzie.]

5. *Error without injury in ruling on pleadings.*—When a demurrer to a pleading is improperly sustained, and the pleading is then amended, the erroneous ruling will work a reversal, unless the record affirmatively shows that, under the amended pleading, the appellant had the benefit of all the evidence which would have been admissible under the original pleading.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by R. E. Bolling & Son, suing as partners, against B. B. McKenzie, and was founded on the defendant's indorsement of a bill of exchange for $2,664.04, which was described in the complaint as "drawn by the Southern Railway Construction & Land Company, on June 1st, 1887, upon C. W. Scofield, president, for the payment of said sum of $2,664.04 to the order of defendant, by whom said bill was indorsed to plaintiffs; and said bill not being paid at maturity, the same was duly protested, of which defendant had due notice." The complaint contained only a single count on the indorsement. The defendant filed fourteen pleas, among which were the following: (4) "that said bill was not duly presented to C. W. Scofield, president of said Southern Railway Construction & Land Company, for payment;" (5) "that said bill was not duly presented to C. W. Scofield, president of the Montgomery & Florida Railway Company, for payment;" (6) "that he had not due notice of the non-payment of said bill as alleged;" (7) "that he did not have due notice of the protest of said bill as alleged." To these pleas the plaintiffs filed two replications: (1) "that since the maturity and protest of said bill of exchange, the said defendant, with knowledge that the usual steps of demand, protest and notice were not duly taken, acknowledged his liability as indorser of said bill, and promised plaintiffs to pay the same;" (2) "that said defendant is the real debtor owing the debt represented by said bill of exchange, the consideration thereof being goods and merchandise sold by plaintiffs to defendant." The court sustained a demurrer to each of these replications, the ground of demurrer to the first being, "because said replication does not allege or show that said promise to pay by defendant was made before the commencement of this suit;" and said replication was then amended by adding that averment. The judgment-entry recites that issue was joined on the amended replication, and on the pleas of the general issue, payment, and partial want and failure of consideration.

On the trial, as the bill of exceptions states, the bill of

[Bolling & Son v. McKenzie.]

exchange, with protest thereof, was read in evidence; but it is not set out in the record. R. E. Bolling, one of the plaintiffs, testified in their behalf, "that he met defendant in Montgomery about thirty days after receiving notice of the protest of said bill, and had a consultation [conversation?] with him upon the subject of his indebtedness to plaintiffs; that defendant, in said conversation, admitted his liability on said bill, and said he would pay it, but witness did not give the substance of the language as to his liability; that he met defendant several times afterwards, and they repeatedly alluded to the matter of this protested bill, and defendant always acknowledged his liability on it; that witness told him he wished to put the claim into judgment, and defendant said it was of no use to sue him, and that he would confess judgment in plaintiffs' favor at any time. Witness said, on cross-examination, that he could not say when and where the different conversations occurred, could not remember who was present, if any one, and could not say positively whether it was before or after the commencement of this suit, but thought it was before." The defendant then testified in his own behalf, "that it was about four months after the protest of said bill before he heard of it; that he had never promised Bolling, after the protest of the bill, that he would pay it, except conditionally; that he had told Bolling, since the commencement of this suit, that he would confess judgment on the bill, if it would not hurt him, nor make him liable for the debt, and would help him to make the money out of the S. R. C. & L. Company; that Bolling came to his place of business, and asked him to confess judgment on the bill, and witness said that he would do so, if it did not prejudice him, or render him liable for the debt. Witness further said, on cross-examination, that he went with Bolling, at his request, into the law-office of E. P. Morrissett in Montgomery; that Morrissett asked him if he had promised Bolling to confess judgment on said bill of exchange, and he answered as above stated—that he had only promised conditionally, and had said that he would help Bolling to get his money from the said S. R. C. & L. Company. Witness was not certain as to the time he was so in the law-office of said Morrissett, but, according to his best recollection, it was after the commencement of this suit; that it was in May, or at the time he and J. C. Richardson were in Montgomery to confer with other parties about bringing suit against said company. Defendant then

offered in evidence two executions against said company, on judgments rendred by the Circuit Court of Montgomery," one in favor of Hobbie & Teague, and the other in favor of Gay, Hardie & Co.; each of which was issued on 3d August, and returned "No property found" on the 11th January, 1889. The court admitted these executions, against the objection and exception of the plaintiffs; "but limited them, in instructions to the jury, to whatever relevancy they might have in fixing the date of said conversation in Morrissett's office, and instructed the jury that they were not to be considered for any other purpose." Said Morrissett, plaintiffs' attorney, was then introduced as a witness for them, and testified "that R. E. Bolling and said McKenzie came together into his office in Montgomery; that he asked McKenzie whether he had not agreed with Bolling to confess judgment on said bill; that McKenzie replied, that he had promised to confess judgment on said claim, but that he preferred seeing his lawyer before he did it; and that this was before the commencement of this suit. This was the evidence in the case. Plaintiffs tender this, their bill of exceptions," &c.

The rulings of the court below on the pleadings and evidence are here assigned as error.

E. P. MORRISSETT, for appellants, cited 8 Wait's Actions & Defenses, 120; 2 Dan. Neg. Instr., §§ 1147-8; 10 La. Ann. 117; 2 Greenl. Ev., §§ 195-6; Chitty on Bills, 739, top.

RICHARDSON & STEINER, contra, cited Story on Bills, § 112; Story on Prom. Notes, § 135; Flowers v. Billing, 45 Ala. 449; Jordan v. Bell, 8 Porter, 56; Rives v. Parmley, 18 Ala. 262; John v. Bank, 57 Ala. 100; Allen v. King, 4 McL. 128.

STONE, C. J.—The bill of exchange which is the foundation of the present suit is described in the complaint as drawn by the Southern Railway Construction and Land Company, upon C. W. Scofield, president, payable to the order of B. B. McKenzie, and by him indorsed to R. E. Bolling & Son. The bill bears deate, as it is averred, June 1, 1887, and it is not stated when it matured, or would mature. We suppose no day was fixed for its payment. We must presume it was payable when presented. The complaint avers that "the said bill, not being paid at matu-

rity, was duly protested, of which the defendant (McKenzie) had due notice." The legal implications of this transaction were, and are, that the Southern Railway Construction and Land Company had funds in the hands of Scofield subject to its draft; that it was indebted to McKenzie, and that by this bill or draft it appointed and directed the payment of its debt to McKenzie out of the funds so held by Scofield. In McKenzie's hands, the bill, *prima facie*, represented an indebtedness to him from the Construction and Land Company. When he traded and indorsed it to Bolling & Son, the *prima facie* intendment was, and is, that for a valuable consideration, he appointed the payment of this indebtedness, which the Construction and Land Company owed to him, to be made to R. E. Bolling & Son. The bill, or draft, and its subsequent indorsement, do not, on their face, purport to rest on one and the same consideration.

McKenzie's obligation to pay Bolling & Son was not primary and unconditional. It was contingent; that is, it bound him to pay in the event Scofield failed to pay, and he, McKenzie, was duly notified of the failure. One reason for requiring due and prompt notice to the indorser, of the principal debtor's failure to pay, is that the indorser may take prompt measures to obtain indemnity against loss. Story Bills of Exch. § 112; Story Prom. Notes, § 153; *Jordan v. Bell*, 8 Por. 53; *Rives v. Parmley*, 18 Ala. 256; *Flowers v. Bitting*, 45 Ala. 448; *John v. City Nat. Bank*, 57 Ala. 96.

It is not pretended that notice of non-payment by Scofield, or by the Southern Construction and Land Company, was given to McKenzie, until a month or more after the bill was dishonored. In fact, it is not shown it ever was presented to Scofield, or that McKenzie was notified that he would be looked to for payment, until a month or more after he indorsed the bill to Bolling & Son.

The defense on which this case went off, was raised by pleas of defendant, denying that the bill had been presented for payment, either to the Railway Construction and Land Company, or to Scofield, and denying that notice of non-payment had been given to McKenzie. To these pleas plaintiff interposed two replications. We will consider them in their inverse order. The second of the replications avers, "that the said defendant is the real debtor, owing the debt represented by said bill of exchange, the consideration thereof being goods and merchandise sold by plaintiffs to

defendant." A demurrer was interposed to this replication, which the court sustained.

The complaint contains a single special count on the indorsement of a bill of exchange. The replication, if otherwise sufficient, counts on the consideration of the indorsement, and, in the absence of a count, general or special, claiming for goods sold and delivered, it is a departure from the cause of action set forth in the complaint. But it is insufficient, for another reason. It does not negative the fact, that the bill in the hands of McKenzie, before it was traded to Bolling & Son, represented a debt due from the Railway Construction & Land Company to him. This, as we have shown, in the absence of a negative averment, is the legal implication arising out of the giving of the bill; and even if the complaint had contained a count for goods sold, the replication would have been insufficient, if it had not either negatived indebtedness from the Railway Construction & Land Company to McKenzie, or denied that the bill was given in payment or part payment of such indebtedness. In other words, to make the offered replication sufficient, it must have been shown that the bill, until it was traded to Bolling & Son, was mere accommodation paper on the part of the Railway Construction & Land Company, given to enable McKenzie to raise money, or money's worth.

The other replication to defendant's pleas sets up "that, since the maturity and protest of the bill of exchange sued on, the defendant, with knowledge that the usual steps of demand, protest and notice were not duly taken, acknowledged his liability as indorser on said bill, and promised plaintiffs to pay the same." To this there was a demurrer, because it did not aver that the acknowledgment and promise were made before the suit was brought. This demurrer was sustained by the court. This ruling was incorrect, as to the acknowledgment averred to have been made. It was clearly right, as to the alleged promise. The replication was amended, and issue taken upon it.

If the drawer or indorser of a bill, with knowledge that the usual steps of demand, protest and notice have not been duly taken, promises to pay, or acknowledges continued liability and obligation to pay, this, without more, fixes his liability to the same extent as if there had been no *laches* on the part of the holder.—2 Dan. Neg. Instr. § 1147; *Thorington v. Wynn*, 12 Wheat. 183; *Sigerson v. Matthews*, 20 How. U. S. 496; *Pugh v. McCormie*, 14 Wall. 361.

Mr. Daniel adds, § 1148, that "it makes no difference at what particular time the promise is made. It may be after suit is brought, and even while a motion for a new trial is pending." In support of this last principle he cites Louisiana decisions.

We concede the correctness of the text, so far as it refers to acknowledgments of continued indebtedness. Such acknowledgment is but another mode of expressing the defendant's admission, that he still owes the debt represented by the bill of exchange. This does not create the liability, but tends only to show that the holder's *laches* have not absolved the defendant from the liability he had incurred by drawing or indorsing the bill. It is an admission that he still owes the debt, the debt itself antedating the suit. The legality of such admission as evidence is not dependent on the inquiry, whether it was made before or after suit brought. This is a self-proving proposition.

When, however, the plaintiff's right of recovery is rested on an alleged subsequent promise to pay, the rule, and the reason on which it rests, are different, for reasons which will suggest themselves. A promise to pay, made after suit brought, will not maintain the action, unless there is something included in the promise which is equivalent to an admission that the liability incurred by the bill is still subsisting.

The replication, to which the court sustained the demurrer we are considering, averred both an acknowledgment of continuing indebtedness, and a promise to pay. As to the former it was sufficient, whether the acknowledgment was before or after suit brought. The replication setting up two answers to the plea, one of which was sufficiently averred, even if the other ground is insufficient of itself, or is insufficiently averred, this is not a defect which can be reached by demurrer. A motion to strike out the imperfect part, or a special explanatory charge, is the proper recourse in such a case; most generally the latter. And the fact that the replication is double, is not an available defect under our system of pleading. The Circuit Court erred in sustaining the demurrer to plaintiff's first replication.

It is contended for appellee, that if the Circuit Court erred in the ruling noted above, it was error without injury; for, under their replication, as amended, the plaintiffs got in all the testimony, alike of alleged admissions and promises. We can not know this. Under the court's ruling on the de-

[Elyton Land Co. v. Mayor and Aldermen of Birmingham.]

murrer, it would have been improper, if not disrespectful in plaintiffs, to offer testimony of acknowledgments of liability made by defendant after suit brought. It is not affirmatively shown they had no such testimony. When error is shown, injury is presumed, unless the contrary is affirmatively and clearly proved.—1 Brick. Dig. 780, § 100; 3 Ib. 406, §§ 25-6.

But there is another reason why the doctrine of error without injury should not be applied in this case. The record before us shows that there was a conflict in the testimony, whether or not a certain conversation which one of the plaintiffs had with the defendant, relating to the subject of this suit, took place before or after the suit was brought. It follows that the court's ruling on the demurrer laid down a rule which may have materially affected the finding of the jury on that disputed question of fact. It denied to them all right to consider any evidence of defendant's alleged acknowledgment, if they failed to find that the conversation in which the acknowledgment is alleged to have been made occurred before the suit was brought.

The executions in favor of other plaintiffs against the Railway Construction & Land Company, and the returns on them, were improperly admitted, even for the limited purpose to which they were restricted. They were *prima facie* irrelevant, and there is nothing shown in the record to overcome that *prima facie* intendment. It is not perceived that they could shed any light on the inquiry, whether the alleged conversation took place before or after the present suit was brought.

Reversed and remanded.