# Western Union Telegraph Co. v. Saunders.

## *Damages for Delay in Delivery of Message.*

(Decided Dec. 21, 1909.   51 South. 176.)

1. *Telegraphs and Telephones; Delay in Delivery; Damages; Mental Anguish.*—Where there is undue delay in the delivery of a telegram from negligence of the company and as a proximate result thereof, the party contracting suffers damage to person, reputation or estate, such person may recover for such actual injuries, and in a proper case, for mental anguish.

2. *Same; Relationship of Parties.*—Where the telegraph company through negligence failed to promptly transmit and deliver a message announcing the serious illness of plaintiff's child addressed to the child's grandmother on the mother's side, the relationship was sufficiently close to the father, the plaintiff, to entitle him to recover for mental anguish resulting in delay in obtaining the presence of the child's grandmother.

3. *Same; Complaint.*—A complaint which alleges the filing of the message for transmission and that it became the duty of the defendant to use due diligence to promptly transmit and deliver the message, but that defendant so negligently conducted itself that the message was not delivered for a long period of time, to-wit, for several hours, etc., because of which plaintiff's mother-in-law failed to promptly reach the bedside of plaintiff's sick child as desired is sufficiently particular in the allegation of the defendant's negligence.

4. *Same; Pleading.*—Where the complaint for delay in the delivery of the message did not state whether the message was verbal or written but alleged that plaintiff sent it, and the plea alleged that the message sued on was in writing, etc., the allegations were sufficient to show that plaintiff was a party to the written message.

5. *Same; Delay.*—A plea alleging that the message for the delay in transmission of which this suit was brought, was in writing on a regular blank form of defendant immediately following the words, "send the following message subject to the terms on the back thereof, which are hereby agreed to," and then avers that

on the back of the message and as a part of the alleged contract, were certain specified provisions exempting the company from liability unless the message was insured or repeated, and further alleging that the message was never insured nor repeated and in fact, was delivered to the addressee in less than two hours after its receipt for transmission, did not state a conclusion of the pleader.

6. *Same.*—A plea is insufficient as an answer to an action for damages for delay in the delivery of a telegram which asserts merely that the telegram was delivered in less than two hours after its receipt for transmission.

7. *Same.*—Pleas asserting that the message was not ordered repeated, and was not insured within the provisions of the contract attempting to limit defendant's liability did not negative defendant's negligence in delaying delivery, and was, therefore, insufficient.

8. *Same; Tolls; Payment.*—Where it appeared that the message when delivered was marked paid, it was competent to show that plaintiff paid one S. 25 cents to pay defendant for transmitting and delivering a telegram, in order to show that the message was paid for by plaintiff.

9. *Evidence; Judicial Knowledge; Telegraph Charges.*—The courts will take judicial knowledge of the fact that telegraph companies in Alabama make a minimum charge of 25 cents for the transmission and delivery of messages for distances such as exist between Birmingham and Ft. Payne.

10. *Evidence; Telephonic Communication by Third Person.*—Where there was evidenec of delivery to the addressee of a message like that claimed to have been telephoned to the defendant's sending office by one S. at plaintiff's instance and request, it was competent to show that plaintiff came to S's office at 6:10 A. M. on the day the message was sent, paid S. 25 cents and asked him to telephone to defendant a message to be sent to the addressee and that S. thereupon picked up the receiver of a phone, called for a number unknown to plaintiff and spoke into the phone the message to be transmitted and delivered.

11. *Appeal and Error; Assignments; Waiver.*—Where assignments of error are not insisted on in brief or argument they will be deemed to be waived.

12. *Pleading; Duplicity.*—Although a plea is duplicitous and each of the several defenses attempted to be pleaded is imperfect, a demurrer may be addressed to any one or only one of such pleadings.

13. *Same.*—Where a plea sets up three several defenses, and one is good, the plea is not subject to demurrer for duplicity, since the plaintiff has the remedy by motion to strike out the improper parts.

14. *Same; Repugnancy.*—The averment that plaintiff lost the amount paid for the transmission and delivery of a message is not contradicted by other allegations showing a delivery of a message; defendant not being in a position to claim that plaintiff had not lost the consideration paid.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by K. D. Saunders against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Complaint was as follows: "Plaintiff claims of defendant $1,999.99 as damages, for that heretofore, to wit, on the 12th day of September, 1905, defendant was in the business of transmitting by wire from Birmingham, Alabama, to Ft. Payne, Alabama, and there delivering, telegraphic messages; that on said date plaintiff delivered to the defendant, at said Birmingham, a message addressed to Mrs. G. B. Cross, which message defendant received at said Birmingham, and for hire and reward paid by plaintiff agreed to use due diligence to promptly transmit and deliver said telegraphic message to Mrs. Cross at Ft. Payne, Alabama, which message read as follows: "Baby worse, come at once"; that it became and was the duty of defendant to use due diligence to promptly transmit and deliver said message to said Mrs. Cross, but, notwithstanding said duty, defendant so negligently conducted itself in that regard that the said message was not delivered for a long time, to wit, for several hours, and as a proximate consequence thereof said Mrs. Cross, who was the mother of plaintiff's wife, and the grandmother of plaintiff's baby mentioned in said message, failed to come to Birmingham for a long time thereafter, and failed to be with plaintiff and his family for a long time during the serious sickness of said baby, and plaintiff's said baby being very sick, and himself and wife greatly worried and anxious about said baby, plaintiff suffered great mental pain and anxiety on account of the absence of said Mrs. Cross, and lost the sum of money, to wit, 25 cents, paid to the defendant for the transmission and delivery of said telegram, all to plaintiff's damage," etc.

The demurrers to the complaint are as follows: "(1) It does not appear that the plaintiff suffered in person or estate by the alleged failure to deliver the telegram. (2) It does not appear that the child referred to in the complaint died, or that there was any real necessity for the appearance of Mrs. Cross. (3) It does not appear that the defendant was guilty of negligence in failing to deliver the message for several hours after it was filed for transmission. (4) It is not averred or shown that the defendant, in the exercise of reasonable diligence, could have delivered the message sooner. (5) For that it is not averred when the message was delivered."

The third plea referred to is as follows: "Defendant avers that the message sued on was in writing, written upon a regular form or blank of defendant immediately following the words, 'Send the following message subject to the terms on the back hereof, which are hereby agreed to.' And defendant avers that on the back of said message, and as part of the alleged contract of transmission and delivery, were the following provisions: (Here follow the printed stipulations and conditions as they appear on the back of the Western Union Telegraph Company's blank for sending messages.) And defendant avers that said message was not ordered to be repeated, nor was same insured, within the meaning of said provision; and defendant further avers that said message sued on was in fact delivered to said sendee in less than two hours after its receipt for transmission."

The demurrers to this plea are sufficiently set out in the opinion.

CAMPBELL & JOHNSON, for appellant.—The complaint was contradictory on its face. A person cannot have

his apple and eat it. The claim, therefore, for the amount of transmitting the message is not a proper element of damage, and this failing, there is none on which to base a recovery for mental anguish.—*Blount's Case,* 126 Ala. 105; *Krichbaum's Case,* 132 Ala. 535. The facts are not sufficiently averred to establish negligence.—*Bir. R. L. & P. Co. v. Barker,* 47 South. 138. The evidence as to the telephonic communication was improperly admitted.—55 S. E. 495; 74 Pac. 375; 36 N. E. 882; 35 Ill. App. 540; 48 Pac. 933. The presumption is that the message was in writing.—*W. U. T. Co. v. Dozier,* 7 South. 325. The affirmative charge should have been given for the defendant.—*W. U. T. Co. v. Henderson,* 89 Ala. 510. Charges 13 and 15 were justified by the evidence, and should have been given.—*W. U. T. Co. v. Dozier, supra.* This is also true of charge 14, 16 and 18.—*Wilson's Case,* 93 Ala. 32. Charges 29, 32 and 33 should have been given.—*W. U. T. Co. v. Crocker,* 135 Ala. 492; 128 N. C. 103; 30 S. W. 298; 39 S. W. 198; 34 S. W. 649; 107 Ky. 469; *W. U. T. Co. v. Ayres,* 131 Ala. 391; *W. U. T. Co. v. Westmoreland,* 44 South. 382. Counsel discuss other refused charges, but without citation of authority.

BOWMAN, HARSH & BEDDOW, for appellee.—The complaint was not subject to the demurrers interposed.— *W. U. T. Co. v. Westmoreland,* 43 South. 790; *W. U. T. Co. v. Wilson,* 93 Ala. 34; *Krichbaum's Case,* 41 South. 16. It was competent to admit the evidence of the telephonic communication.—*W. U. T. Co. v. Rowell,* 45 South. 80. The charges are bunched, and hence, the court was not in error in refusing them. Plaintiff was entitled to recover for mental pain and anguish.—*W. U. T. Co. v. Crocker,* 135 Ala. 492; *W. U. T. Co. v. Prevatt,* 43 South. 107; *W. U. T. Co. v. Crumpton,* 138 Ala. 632.

EVANS, J.—There are 52 assignments of error in this record. The first assignment is to the overruling of defendant's demurrer to the complaint. The appellant contends in his brief, in arguing this proposition, first, that "the averment that the plaintiff lost the amount paid for the transmission and delivery of the message is contradicted on the face of the complaint." We do not think that the complaint is subject to this criticism. A person may recover damages for undue delay in transmitting and delivering a telegram, caused by the negligence of the company undertaking the transmission and delivery of the message for hire and reward paid by him, although the message may, after damage has been sustained, be delivered. In other words, the defendant cannot be allowed to say, after undue delay in transmitting and delivering, caused by its negligence, from which damage resulted, "I did finally deliver the message, and therefore you have not lost the consideration paid." If the contract was to deliver promptly, or if the law imposed the duty of delivering promptly, a delivery after undue delay is not a compliance; and if the undue delay is caused by the negligence of the company undertaking the transmission and delivery, and damage to the person, reputation, or estate of the party contracting with such company results as a proximate result thereof, such party may recover for such actual injury, and also in a proper case for injury to feelings.—*W. U. T. Co. v. Westmoreland*, 150 Ala. 654, 43 South. 790; *W. U. T. Co. v. Wilson*, 93 Ala. 34, 9 South. 414, 30 Am. St. Rep. 23.

The second contention of appellant with reference to the demurrer to complaint is that the facts averred are insufficient to establish negligence which could proximately result in the damages claimed. As said by McClellan, C. J., in the case of *Postal Tel. Co. v. Jones*,

133 Ala. 225, 226, 32 South. 502.: "There is no merit in the contention for appellant that the complaint did not aver the negligence counted on with sufficient particularity. The rule is that, the duty to exercise due care being shown, the failure to perform that duty, the negligence causing the injuries complained of, may well be averred in the most general terms, little, if at all, short of the mere conclusions of the pleader; and this upon the entirely sufficient consideration, among others, that if the defendant has been guilty of negligence he knows, as well as or better than the plaintiff can, in what that negligence consisted"—citing numerous authorities.

The second assignment of error by appellant is to the ruling of the court in sustaining demurrer to the third plea. There are eight grounds of demurrer. The first three grounds are clearly not good, for the reason that the plea must be read in the light of the complaint, and, so reading it, the allegations are sufficient to show that plaintiff was a party to the written telegram. In other words, the complaint does not state whether the telegram was verbal or in writing, but does state that the plaintiff sent it. The plea states that the message sued on was in writing, etc. The message sued on was a message alleged in the complaint to have been sent by plaintiff, and said plea must be construed as confessing that it was. That the plea is not subject to the fourth ground of demurrer needs no argument, as it is clearly not a conclusion of the pleader, but sets up facts. Ground 4a is probably not what the plaintiff intended to say, but, as it is, it is clearly not a good ground of demurrer, as the matters therein alleged could not have been a consequence of defendant's failure to deliver said telegram, and, it would be immaterial if they were. Ground 4b is not good, for the reason that the message

and the contract for sending same are alleged in the plea to be in writing. If this is so, the plaintiff was charged with notice of what the contract contained. The fifth ground was a general demurrer, and could not be considered.

In considering the sixth ground of demurrer, it is proper to state the said plea sets up three several defenses, as follows, after first setting up, by way of inducement, the terms of the written contract upon which defendant undertook to send said message: (1) That said message was not ordered to be repeated; (2) that said message was not insured, within the meaning of the provisions of the written contract; (3) that said message was in fact delivered to the said sendee in less than two hours after its receipt for transmission. The sixth ground of demurrer was directed to the last defense set up, and was as follows: "For that the fact set up in said plea, 'that said message was in fact delivered in less than two hours,' does not necessarily as matter of law show due diligence." This plea at common law would have been subject to special demurrer, but not so under our system.—*Cannon v. Lindsey,* 85 Ala. 198, 3 South. 676, 7 L. R. A. 38; *Ewing v. Shaw,* 83 Ala. 333, 3 South. 692. Where the plea is double, and one defense set up is good, and the other is bad, the plea is not subject to demurrer on account of the bad defense attempted to be set up. A motion to strike out the imperfect part is the proper practice.—*Bolling & Sons v. McKenzie,* 89 Ala. 476, 7 South. 658. But where the plea is double, and each several defense attempted to be set up therein is imperfect, and the ground of demurrer is directed to only one defense set up in the plea, can the court properly sustain the demurrer? The entire court, with the exception of Justice Anderson and the writer of this opinion, are of opinion that in

such a case it is proper to sustain the demurrer; and therefore this court holds that the lower court was without error in sustaining the demurrer to plea 3, on the sixth ground thereof. It needs no argument to show that a negligent delay in the transmission and delivery of a telegram for two hours might work great damage, for which the company undertaking to transmit and deliver same might be held liable. It is equally true that the other two defenses set up could not stand the test of a proper demurrer, for they fail to negative the negligence of the defendant alleged in the complaint.—*Western Union Tel. Co. v. Way*, 83 Ala. 555—556, 4 South. 844.

The third assignment of error, not being argued in appellant's brief, is treated as waived.

So far as insisted on in the brief of appellant, the other 48 assignments of error relate to three propositions: (1) The time and manner of the delivery of the message to the defendant for transmission and delivery. (2) The payment by plaintiff of the sum of 25 cents to the defendant for transmission and delivery of said message. (3) As to whether or not relation of the sender, the sendee, and the person about whom the message was sent was such as would sustain damages for mental anguish. We shall undertake to dispose of these assignments of error by a statement and discussion of the evidence as it relates to these three propositions, all of which, and every part of which was offered by plaintiff, and every part of which was objected to by defendant, and exceptions to the adverse ruling of the court were duly reserved. Motion was made to rule out each part of said testimony, and exception was reserved to the refusal of the court to grant such motion. Motion was made to rule out all of the testimony of the plaintiff as to what Mr Stillwell spoke into the receiver of the tele-

phone, and exception was duly reserved by defendant to the refusal of the court to grant such motion.

The evidence tended to show that K. D. Saunders, the plaintiff in the case, was on the 12th day of September, 1905, and had been for some time prior thereto, living in the city of Birmingham, Ala. At said date and for some time prior thereto his mother-in-law, Mrs. G. T. Cross, was living in Ft. Payne, Ala. At said date the said Saunders had a child about 10 months old, who for some time had been sick with typhoid pneumonia. The said Saunders was the father of the child, and the said Mrs. Cross was its grandmother. At some time prior to said 12th of September, plaintiff had communicated with his said mother-in-law by letter about coming to see the baby on receipt of a telegraphic message, if one was sent. On said morning of September 12th the said Mrs. Cross, in anticipation of such a message, had closed up her house and was sitting on the doorsteps ready to go at a moment's notice. At 6:10 a. m. on September 12th, the baby having grown suddenly worse, the plaintiff went into the office of the paymaster of the Birmingham Pipe & Casting Company, of the city of Birmingham, and paid Mr. Stillwell, the paymaster in said office the sum of 25 cents, and asked him to telephone to the defendant, the Western Union Telegraph Company, the following message to be transmitted and delivered to the said Mrs. G. T. Cross at Ft. Payne, Ala.: "Baby is worse, come at once." The said Mr. Stillwell thereupon picked up the receiver of the telephone, and called a certain number, which witness, the plaintiff, did not know was the office number of defendant, and spoke into the phone the message to be transmitted to Mrs. G. T. Cross at Ft. Payne, Ala.: "Baby is worse, come at once." At 8:30 o'clock on the morning of September 12, 1905, the agent at Ft. Payne,

Ala., received a message for Mrs. G. T. Cross and delivered the same to her son, who came for it, somewhere from 9.:03 to 9 :30 o'clock of said morning. The evidence further tended to show that by reason of the delay in transmitting and delivering said telegram Mrs. Cross missed the train on said morning and was delayed 14 or 16 hours in reaching the bedside of her grandchild. This telegram was introduced in evidence, but the bill of exceptions fails to state its contents. We will therefore presume that it was identical as to the verbiage with the words spoken by Mr. Stillwell into the phone. It was shown that said telegram had the following written upon it: "1 B. M.;" also, "Sent by K.," also, "received by R. A.;" also "5 pd." These were explained by witness as follows: " '1 B. M.' was the call of office. 'Sent by K.,' that was a fellow by the name of Whitfield. 'Received by R. A.,' Mr. Rippy, defendant's agent at Ft. Payne, signs 'R. A.' He is now sitting in the court room with defendant's counsel. '5 pd' means that the message contained five words and was paid—not to be collected for at the Ft. Payne office of defendant."

The first question to be considered is: Should the plaintiff, against the objection of defendant, have been allowed to testify, in his own behalf, as to what Mr. Stillwell did about telephoning for plaintiff; and should not that part of the evidence of plaintiff have been ruled out on motion of defendant? After a careful consideration of the proposition, a majority of the court are of opinion, and so decide, that the subsequent evidence of the delivery to the sendee of a message like the one said to have been spoken into the telephone by Mr. Stillwell made the said evidence of plaintiff admissible, and that the court below did not err in admitting the same, or refusing to rule it out.

As to the second proposition, viz., the payment by plaintiff of the sum of 25 cents for the transmission and delivery of the telegram, the court is of the opinion that the evidence of plaintiff that he paid Mr. Stillwell 25 cents to pay to defendant for transmitting and delivering said telegram, when taken in connection with the evidence which tended to show that the message when delivered to the sendee was marked "Paid," was admissible to show that the message was paid for by plaintiff. The court takes judicial knowledge of the fact that telegraph companies in this state make 25 cents a minimum charge for transmitting and delivering messages the distance from Birmingham, Ala., to Fort Payne, Ala.

The third proposition before mentioned was whether the relation of the sender, the sendee, and the person about whom the message was sent was such as to entitle the plaintiff to recover damages for mental anguish. Was the relation such as to raise the presumption of law that the sender suffered mental pain and anguish by reason of the absence of the sendee from the bedside of his child, who was very ill? In the well-considered case of *Western Union Telegraph Co. v. Crocker*, 135 Ala. 496, 33 South. 45, 59 L. R. A. 398, where the relation of the parties, so far as kinship is concerned, was exactly the same as in this case, in rendering the opinion of the court, Justice Dowdell—now Chief Justice—said in speaking of the relationship of mother-in-law and son-in-law: "It is the closest of all relationship by affinity, and from which, if love and affection do not naturally spring, it is on account of some exceptional reason or cause; a love, too, that is strengthened in the birth of a grandchild. The tender and doting love of the grandmother for her grandchild, and the reciprocal confiding love of the little child, is a matter of common knowledge. * * * We are of opinion that the relationship be-

tween the sender and sendee, and the person named in the message, is such as to warrant the recovery for mental suffering and anguish." It would seem from the above matter in quotation marks that mental pain and anguish of the father, under the kinship relations, was to be inferred as matter of law, and if there was "some exceptional reason or cause" in any case why the father, under such circumstances, would not be comforted by the presence of the child's grandmother, his mother-in-law, or subjected to mental pain and anguish by her absence, it was matter of defense.

It was entirely proper for the plaintiff to prove the meaning of the indorsements made on the telegram by the receiving agent in the regular course of his business as agent for the company.

Affirmed.

DOWDELL, C. J., and ANDERSON, McCLELLAN, and MAYFIELD, JJ., concur. SIMPSON, SAYRE, and EVANS, JJ., dissent.

EVANS, J. ( dissenting).—From the foregoing opinion, written by myself in accordance with the views of a majority of the court, Justice ANDERSON and myself dissent from conclusion reached by the other members of the court in sustaining the sixth ground of demurrer to the third plea; while Justices SIMPSON and SAYRE and myself dissent from the view taken by the other members of the court in sustaining the action of the lower court in admitting, and refusing to rule out, that part of the testimony of plaintiff wherein he testified to what Mr. Stillwell spoke into the telephone in his office at 6:10 a. m. on September 12, 1905. I shall respectfully undertake to set forth my reasons for dissent upon both of these propositions.

[Western Union Telegraph Co. v. Saunders.]

1. Should the sixth ground of demurrer to the third plea have been sustained? The plea, after setting up, by way of inducement, the alleged contract in writing, upon which the message was alleged to have been sent, then sets up three several defenses: (1) That said message was not ordered to be repeated; (2) that said message was not insured, within the meaning of the written contract; (3) that said message was in fact delivered to the said sendee in less than two hours after its receipt ·for transmission. The sixth ground of demurrer only ·challenges the sufficiency of the third defense set up by said plea.

At common law this plea would have been subject to special demurrer for duplicity; but under our system two or more defenses may be set up in the same plea, and when so set up, and issue is joined thereon, all must be proved, whether they be good or bad.—*Walter v. Alabama Great Southern Railroad*, 142 Ala. 482, 39 South. 87. Where two defenses are set up in the same plea, one of which is good and the other bad, the bad defense cannot be eliminated by a demurrer directed thereto, but only by motion to strike out the imperfect part.—*Bolling & Sons v. McKenzie*, 89 Ala. 476, 7 South. 658. If a defendant sets up in his plea two defenses, and the plaintiff's demurrer fails to point out any defect in one of the defenses, or even to challenge its sufficiency in any way, does he not thereby admit its sufficiency, and can the court ex mero motu declare that the other defense is bad? Can the court declare any defense bad which is not objected to by the plaintiff? Not only the court cannot ex mero motu so declare it, but the particular defect of the defense must be pointed out. It is evident to my mind that a demurrer to a double plea, pointing out defects in each defense set up would be a good demurrer, and should be sustained. If

a demurrer to a double plea went to only one defense set up, it should not be sustained, for the reason that it does not go to the whole plea, but leaves one defense unchallenged. As long as a defense is unchallenged by demurrer pointing out the defect, the court should treat it as a good defense, unless it is stricken, in proper case, upon motion of plaintiff. For the foregoing reason, we do not think the court below was without error in sustaining demurrer to third plea.

2. Should the evidence of plaintiff, testifying as a witness for himself, as to the telephoning by Mr. Stillwell, have been admitted to show the time and manner of the delivery of the telegram to the defendant, or should it not have been ruled out on motion of plaintiff, when as defendant contends, it was not by any subsequent evidence made legal? On the examination each question was objected to, and motion made to rule out the answer, and exception was taken to the adverse ruling of the court. We suppose that it would not be contended by any one that said evidence was admissible as tending to prove the manner and time of delivery of the telegram by plaintiff to the defendant for transmission and delivery, except for the evidence tending to show that a like telegram was subsequently delivered by the defendant to the sendee. Such I understand from the bill of exceptions to have been the opinion of the trial court, and such I understand to be the opinion of my Brothers who agree with the ruling of the trial court. According to this view, then, if the defendant had not delivered the telegram, which it did deliver, to the sendee, the evidence about the telephone transaction would have been inadmissible for any purpose.

"Telephone conversations, in so far as concerns their admissibility in evidence, are in the main governed by the rules of evidence which govern the admission in

evidence of oral statements made in an ordinary con-versation, except, of course, the necessity of identification of the party against whom the conversation is sought to, be used." The above quotation taken from Encyclopædia of Evidence, vol. 12 p. 477, refers to cases where one of the parties to the conversation is testifying. "A telephone conversation, being shown by other competent evidence to have been between the parties to the action and upon the subject-matter of the litigation, may be testified to by a bystander so far as he heard it."—Encyclopædia of Evidence, vol. 12, p. 478. The last matter in quotation marks states the law that is applicable to the case sub judice. The witness here was a bystander, and there is no "other evidence" at all to show that, at the time Mr. Stillwell was speaking into the receiver of his phone, his phone was connected with the office of defendant, or that he was speaking to any one. The fact that a like message was received at defendant's Ft. Payne office some hours afterwards cannot supply the necessary evidence which must be produced in order to make the evidence of the telephone transaction admissible, because no inferences arise therefrom which could in any manner tend to show that the message was received by defendant for transmission and delivery at that time and in that manner. What presumptions of fact arose from the receipt of the message at the Ft. Payne office of defendant as to the time and manner of its receipt at the Birmingham office for transmission and delivery? Certainly there is no other evidence in the case to support the admissibility of the evidence of the telephone transaction, except the legal inferences and presumptions arising from the receipt of the message at the Ft. Payne office. We think that the only presumption or inference that the law could indulge would be in defendant's favor on these points,

to wit, that the message was delivered to the Birmingham office by plaintiff, or some one by him duly authorized, and was promptly transmitted to the Ft. Payne office, as was defendant's duty to do. Suppose that its receipt at the Ft. Payne office and the presumptions arising therefrom was all the evidence as to the time and delivery of the message to defendant for transmission; what would it tend to prove? Would it tend, in the slightest degree, to prove that defendant had had, several hours before, a telephone communication from plaintiff or his agent by which the message was delivered to plaintiff for transmission? The question answers itself. Suppose we take the other end of the propositions. What presumptions or inferences of fact, arise against defendant from the fact that plaintiff asked Mr. Stillwell to telephone to defendant and that the said Stillwell picked up the receiver of the telephone, called a number not shown to be defendant's number and spoke into the telephone certain words? There is no presumption or inference of law, arising from such facts, that said message even went further than into the receiver of Mr. Stillwell's phone. The presumptions and inferences arising from the two matters proven in no way connect the one with the other, but, on the contrary, tend to disprove, rather than prove, any such connection.

For the foregoing reasons, we think the evidence as to the telephone transaction should have been ruled out, when plaintiff failed to introduce evidence tending to show that, at the time Mr. Stillwell was talking into his phone, it was connected with the office of defendant, and that he was speaking to some one in that office.

The authority which counsel for appellant relies upon as authority for sustaining the action of the lower court in admitting said evidence and refusing to rule

it out is the case of *Western, Union Telegraph Co. v.
Rowell,* 153 Ala. 295, 45 South. 80, decided by this court
Justice Denson writing the opinion. The facts in the
case cited, as stated in the opinion of the court, were
that Rowell, the plaintiff, called over the phone for con-
nection with the Western Union Telegraph Company
of Montgomery, and had a conversation with the per-
son who answered the phone after connection was giv-
en. The plaintiff did not know who the person was who
talked with him over the phone. The plaintiff in that
case did the phoning for himself, and was testifying as
to the connection with the Western Union Telegraph
Company, and the conversation had by him with the
person at the other phone, which had been connected
by the central phone office with the phone into which
he was speaking. We fully agree with the opinion of
the court in that case, but it is entirely different from
the case sub judice in the legal principles involved. In
that case the person who did the telephoning was the
witness. In this case a bystander is the witness. In
that case the person doing the telephoning asked the
central office to connect him with the Western Union
Telegraph Company's office, and connection was given
presumably with that office, and the witness knew that
some one came to the phone and answered the call. In
this case a bystander testifies that Mr. Stillwell called
for connection with a certain number; and it is not
shown what that number was, nor that it was the num-
ber of the defendant company. In that case it was
shown that some one answered the phone. In this
case it is not shown that any one answered the phone.
If the plaintiff in this case, who was testifying for him-
self, had any information that Mr. Stillwell's phone
was connected with the Western Union Telegraph Com-
pany's office, it was because Mr. Stillwell told him so,

and it was mere hearsay and was inadmissible. That case was, in no sense, an authority for the ruling in this case.

For the foregoing reasons, we think that the case should be reversed and remanded.