# Brindley *v.* The State.

## *Murder.*

(Decided June 3, 1915.   Rehearing denied June 30, 1915.
69 South. 536.)

1. *Bill of Exceptions; Establishing.*—Where the case was heard and judgment entered on August 25, 1914, and the bill of exceptions was presented to the trial judge within 90 days therefrom, and such judge died within 90 days after presentation without having signed said bill, and it appears by agreement of counsel that the purported bill truly presented the points for decision, together with the facts in the case, such bill will be established on motion.

2. *Conspiracy; Proof; Sufficiency.*—A conspiracy need not be proven by positive evidence, but its existence may be inferred from the circumstances attending upon the doing of the act, and the subsequent conduct of the parties.

3. *Homicide; Declaration of Defendant.*—Declarations made by a defendant, both before and after the commission of the homicide, tending to connect him with it, are admissible against him.

4. *Same; Detectaphone; Conversation.*—Testimony of a witness that he overheard a conversation, with interruptions, through a detectaphone which had been installed in a room of the jail where the defendant and two other persons jointly indicted with him for the murder were confined, to the effect that defendant asked one of the other parties what a certain person had done, and the reply that he had heard that that party had turned state's evidence; that defendant said that he could prove an alibi if he could find the right man, and the other defendant replied, "They all know I was up at the saloon;" also that defendant asked the other parties what they did with the gun, and their reply that they would never be found as they were concealed under an old rail fence, and also why they did not get the old man, and the reply that they had to get away from there too quick, were admissible when accompanied by an exhibition of the detectaphone and an explanation of its operation.

5. *Appeal and Error; Harmless Error.*—Although the evidence·adduced was not admissible against defendant, yet where it had no tendency to connect him with the killing, it could not be said to be prejudicial.

6. *Trial; Objection; Necessity of.*—Where a defendant does not object to testimony offered at the trial, the question of the competency of any part of it cannot be raised for the first time on appeal.

7. *Homicide; Evidence; Tracks.*—Where the charge was that the defendant had conspired with his co-defendant to have the murder committed, evidence that a witness had examined mule tracks in the woods near where the killing occurred, that there were fresh shod foot impressions showing a rough calk not wedged at the end as usual,

and that he saw some of the tracks of the mule made in town which were the same as those seen near the killing, and that the mule whose tracks he saw in town was brought to the barn by one of the alleged conspirators, was admissible.

8. *Same.*—Where a witness testified that he saw fresh mule tracks in the woods near the scene of the killing and stated that the calk on one was larger than the calk on the other, and that he afterwards saw a mule in town driven by one with whom defendant was charged to have been in conspiracy, which was the mule whose tracks he had examined, there was no error in allowing him to be asked what was the measurement of the mule's tracks, nor in permitting an answer that the track witness had measured was not as plain as where he found it out there, that he could not get the exact measurement of the heel, but that the length of it was the same.

9. *Trial; Form of Question.*—A question to a witness, "What did you say?" was too general and did not disclose that the evidence thereby sought would be material, and as the defendant did not inform the court what was proposed to be shown thereby, there was no error in sustaining objection to it.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Alpheus Brindley was convicted of murder, and he appeals. Affirmed.

F. E. ST. JOHN, GEORGE H. PARKER, and WILLIAM H. STODDARD, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

THOMAS, J.—(1) This cause was submitted on motion to establish a bill of exceptions and on the merits. The record informs us that the case was tried on the 25th day of August, 1914; that the bill of exceptions was indorsed, "Presented," on November 21, 1914, by Hon. D. W. Speake, the presiding judge; and that Judge Speake died on the 3d day of January, 1915, after failing to sign the same as a bill of exceptions. An agreement was incorporated in the record of the case, signed by the Attorney General of the state of Alabama and the solicitor of the eight judicial circuit of Alabama,

and by George H. Parker as attorney for the defendant, stipulating to the effect that the said document, purporting to be a bill of exceptions, and now presented to the Supreme Court to be established as such, correctly and truly states the points for decision, together with the facts in said cause.

Appellant's motion to establish his bill of exceptions is granted, and the cause will be heard on its merits.

The appellant, Alpheus Brindley, was tried for murder in the first degree in the circuit court of Cullman county, Ala., and was convicted and sentenced to the penitentiary for life. Appellant was indicted jointly with Clyde Patterson and John W. Patterson for the killing of Robert Miller, by shooting him with a gun. Severance was demanded, and granted, and the two Pattersons were tried and convicted, and sentenced to the penitentiary for life.—*Patterson v. State*, 191 Aa. 16, 67 South. 997. On the trial of appellant, Brindley, the testimony for the state tended to show that on Monday, the 20th of July, 1913, the deceased, Bob Miller, his father, Mack Miller, and his kinsman, Rube Carter, came from their home into the town of Cullman, arriving in the morning, and that they departed in the evening in a wagon; that Robert Miller and his father were sitting on the wagon seat, and Carter was sitting in the back part of the wagon; that when they had proceeded about two miles, and reached a point where the road makes a sharp curve and is secluded by a dense wood, two shots were fired upon them, killing Robert Miller and Rube Carter. Clyde and John Patterson were recognized, standing with guns in hand, one pulling the breach of his gun; and both went away in the direction of the field and woods, whence their tracks were followed to the road. The vicinity where the shoot-

ing occurred showed preparation for the homicide, and buckshot were taken from trees along the line of fire, and others, from the bodies of the deceased men, of the same kind and size. The evidence showed strong motive, and threats, on the part of the defendant Brindley and the Pattersons, against Miller.

(2) It would subserve no good purpose to set out the evidence. It is sufficient to say that from the whole evidence a conspiracy, on the part of Brindley and the Pattersons, to take the lives of the Millers, may be inferred. It is not necessary to prove a conspiracy by positive evidence, but its existence may be inferred from circumstances attendant upon the doing of the act, and from the conduct of the parties subsequent to its commission.—*Morris v. State,* 146 Ala. 66, 41 South. 274; *Buford v. State,* 132 Ala. 6, 31 South. 714; *Tanner v. State,* 92 Ala. 1, 9 South. 613; *Williams v. State,* 81 Ala. 1, 1 South. 179, 60 Am. Rep. 133; *Martin v. State,* 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91; *Gibson v. State,* 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96; *Elmore v. State,* 110 Ala. 63, 20 South. 323; *Evans v. State,* 109 Ala. 11, 19 South. 535; *Johnson v. State,* 29 Ala. 62, 65 Am. Dec. 383; *Scott v. State,* 30 Ala. 503. And no positive agreement to commit the crime need be shown.—*Marler v. State,* 67 Ala. 55, 66, 42 Am. Rep. 96; *Jones v. State,* 174 Ala. 53, 57 South. 31.

(3, 4) The testimony of witness Wren was that he overheard defendant Brindley, after being incarcerated in the Jefferson county jail, ask Patterson if he knew what Grady Harris had done, and Patterson said in reply that he heard Harris had turned state's evidence; that the conversation was then interrupted by the noise of a hammer on a building near by, and witness then heard Patterson say he could prove an alibi if he could

[Brindley v. The State.]

find the right man, and Brindley replied, "They all know I was up there at the saloon;" that there was another space of time in which witness could not hear what they said, after which witness heard Brindley ask Patterson what he did with the guns, and heard Patterson reply, "They are all right; they won't find them; they hid them under an old rail fence," and that witness further heard Brindley ask Patterson why he did not get the *old man,* and Patterson replied that he "had to leave there too quick."

Declarations made by a defendant, both before and after the commission of the homicide with which he is charged, tending to connect him with it, are admissible as evidence against him.—*Johnson v. State,* 87 Ala. 39, 6 South. 400. The witness Wren testified that he was acquainted with, and knew the voices of, the Pattersons and Brindley; that he heard the conversation above detailed through a "detectaphone," installed in the room of the jail where the defendant and the Pattersons were confined. He explained how the instrument was installed, how the "receiver was imbedded in the wall of the cell where the defendant and the Pattersons were confined, and how the "transmitter" was situated in the room where witness was listening, and how the two instruments were connected by electric wiring charged by batteries. The detectaphone was shown to the jury, and explanation was made to them how it was installed, and how the conversation was overheard.

With the perfection, and widespread use, in modern life, of devices for electro-telephonic communication, by means of which direct communication is had over great distances and the human voice understood and recognized, it is but reasonable to assume that the explanations of the witness, of the device, and the exhibit there-

of, were within the practical comprehension of the jury; and it was therefore competent for this witness to detail to the jury the conversation between defendant and the others accused, and to exhibit to the jury a "detectaphone," explaining its operation to them.—*W. U. T. Co. v. Rowell* 153 Ala. 295, 314, 315, 45 South. 73; *W. U. T. Co. v Saunders,* 164 Ala. 234, 51 South. 176, 137 Am. St. Rep. 35. Mr. Wigmore, in his work on Evidence (volume 1, § 669), discusses the admissibility of authentical information by telephone.—*Sullivan v. Kuykendall,* 82 Ky. 487, 56 Am. Rep. 901; *Oskamp v. Gadsden,* 35 Neb. 7, 52 N. W. 718, 17 L. R. A. 440, 37 Am. St. Rep. 428; *Globe Print. Co. v. Stahl,* 23 Mo. App. 451; *German Bank v. Citizens' Bank,* 101 Iowa 530, 70 N. W. 769, 63 Am. St. Rep. 399; *Wolfe v. M. P. R. Co.,* 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331; *Brown v. Com.,* 76 Pa. 319; *People v. Ward,* 3 N. Y. Cr. R. 483. In *Andrews v. State,* 33 Ohio Cir. Ct. R. 564, it was held that experiments made by the inventor and maker of a different dictograph, and under different circumstances, from that used to obtain evidence and to prove the crime complained of, are properly admissible to demonstrate the construction and make autoptic proference of the scientific principles involved in the operation thereof.—See 18 Am. Dig. (Key-No. Series) p. 684, first column.

The question, then, is not a new one, though it is presented in a new form in the "detectaphone." There was no error in the admission of this testimony.—*Parker v. The King,* 3 British Rul. Cas. 68, 72; *Herlost v. Emporer,* 7 Crim. L. J. 406; *People v. Jennings,* 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N. S.) 1206; Wharton, Crim. Ev. (8th Ed.) 544; 1 Wigmore, Ev. § 795; Rogers, Expert Test. (2d Ed.) § 140; Jones, Ev. (2d Ed.) § 581.

(5, 6) There was no prejudicial error in the questions to, and the answers by, the witness Clifton, on the trial of the defendant Brindley. The declarations of Clyde Patterson, together with his manner and appearance, after the homicide, did not constitute evidence against Brindley; yet from a careful consideration of the two questions and answers, they were not hurtful to the defendant, for they in no wise tended to connect Brindley with the crime.

(7, 8) It is next insisted by appellant that the court committed error in allowing witness Sparks to testify to the measurement of the mule tracks near Byer's Opera House in Cullman. From an examination of the testimony of the witnesses, we find that the witness was allowed to state that he made an examination of some mule tracks in the woods a short distance from where the killing occurred, and that there was a peculiarity about these tracks; that they were fresh shod foot impressions, showing a rough calk—not wedged at the end as usual; that he saw some of the tracks of the mule made in town, and that the tracks in town were the tracks witness saw out there, showing a rough, peculiar calk like the ones out there; that the mule whose tracks he saw in town was brought to the barn by Clyde Patterson. The defendant did not object to this testimony, and the question of the competency of any part of it cannot now be made for the first time on appeal. Witness Sparks gave the facts and peculiarities of correspondence or identity, and it was for the jury to find whether the mule driven by Patterson that evening or the next day in Cullman was the mule drawing the buggy in the woods near the scene of the homicide.—*Livingston v. State*, 105 Ala. 127, 16 South. 801.

(9) The witness Connally testified to the fresh buggy tracks and mule tracks in the woods near the scene of the homicide, stating the peculiarity about the mule tracks—that the calk of one shoe was larger than the other—and, without objection, was allowed to state that he afterwards saw a mule in Cullman, driven by Clyde Patterson, and that it was the mule whose tracks were examined by Sparks and Biggers, and that the track of Patterson's mule had a large calk on one of the shoes.

There was no error in allowing the question to be asked by the solicitor, "What was the measurement of that mule track?" nor in permitting the answer, by the witness, "The track that I measured was not as plain as where we found it out there; I could not get the exact measurement of the heel, but the length was the same." This answer was competent to go to the jury, for what it was worth, in connection with what witnesses had testified as to the similarity of the mule tracks, in the woods, near the scene of the murder, to the tracks in Cullman made by Clyde Patterson's mule.—*Pope v. State,* 174 Ala. 63, 79, 57 South. 245; *Fuller v. State,* 117 Ala. 36, 23 South. 688; *Bushby v. State,* 77 Ala. 66; *Gilmore v. State,* 99 Ala. 154, 13 South. 536.

(10) There was no error in sustaining the objection to defendant's question to witness Patterson, "What did you all say?" The question was too general. It did not disclose that the answer sought to be elicited would be material. The question was not answered, and it is not made to appear what the answer would have been. When a question is so general that an answer cannot be said to be prima facie admissible, the party is required to inform the court what is proposed to be

proved, so that the court may see whether the evidence sought to be elicited is proper. The question in this case was susceptible of an answer that would have been wholly immaterial, and the court was not informed of its materiality.—*B. R., L. & P. Co. v. Barrett,* 179 Ala. 285-291, 60 South. 262, and authorities there collected. The question, "What else was said in that connection?" in *Drake v. State,* 110 Ala. 9, 20 South. 450, cited by appellant's counsel, disclosed on its face that competent testimony was sought to be elicited "in connection" with the other testimony before the jury, explanatory of the threat proved by the state. Here the witness may have made answer to the question any immaterial conversation that may have taken place between the men in prison.

It follows from what we have said that no prejudicial error was committed on the trial of the cause. The case is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.